THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
FRANK DAVINO, Appellant.

Argued October 16, 1940; decided December 31, 1940.

*Harry G. Anderson* and *Leon Fischbein* for appellant.

*William O'Dwyer, District Attorney (Henry J. Walsh*
of counsel), for respondent.

CONWAY, J. On the 31st day of October, 1938, the deceased, Thomas J. Hitter, a fireman, returned to his fire house after cashing the pay checks of his fellow firemen. As he stopped his automobile outside the fire house, his assailant drove alongside, shot him, jumped from the automobile, ran around the automobile of Hitter to the front right-hand door, shot him again, took the money from the pocket of deceased, ran back to his own automobile and sped away.

The question for the jury was one of identity, which is always a difficult one. None of the witnesses who saw the occurrence was nearer to it than seventy feet. One saw only the left profile of the assailant and did not see the defendant until in the hallway of the court house some seventeen months later. Another witness, who could not identify the defendant, said that the assailant seemed to have a peculiar way of running; that it was more or less of a shuffle. The other three went to the office of the Parole Commission about seven weeks after the occurrence and saw the defendant who had been directed to report as a parolee.

Of those three, one said that on the day of the homicide the assailant ran as though bowlegged or as if he had a club foot; that there was something wrong with one of his feet and that her recollection was that the assailant was without a coat. At the parole office that witness said she would like to see the defendant without a coat. He then had on a camel's hair coat. Later in the day at the station house she asked to have that coat removed and then identified the defendant.

The second of these three witnesses said that the defendant at the time of the homicide had on a gray hat and gray top coat. At the parole office that witness said he would like to see the defendant with his hat on. Later he said he became positive in his identification when he saw defendant again later in the day in the station house and in the District

Attorney's office the following morning. He said he wished to see the man in a gray coat and hat and to see his profile and to see the hat pulled over his eyes, the way he had it on the day of the homicide. He said the clothing had some part in making him positive in his identification. He testified that he did not say definitely that the defendant was Hitter's assailant until in the District Attorney's office on the day following his visit to the parole office. There he wished to see defendant's profile. That witness noticed nothing about the manner in which the assailant of Hitter ran, whether with a limp or a dragging foot.

The third witness noticed that Hitter's assailant wore a gray overcoat and had an odd shaped nose and dark complexion. He did not notice anything peculiar about the man's gait; he trotted. He said that apart from the dark complexion and the odd shaped nose there was nothing unusual about the assailant.

Apparently, from the record, the defendant is neither bowlegged nor club-footed. There was no evidence of flight or enrichment.

The defendant was not tried until fifteen and one-half months after his arrest.

The defendant interposed an alibi. We cannot say as matter of law that it was destroyed: Ludwig did not testify; the testimony of the witness Bellilo is unreliable and the witness Lemal did not recall the date of the cashing of the check which was involved as part of the alibi.

As was said by CRANE, Ch. J., in *People* v. *Crum* (272 N. Y. 348, 350): " A review of the facts means that we shall examine the evidence to determine whether in our judgment it has been sufficient to make out a case of murder beyond a reasonable doubt. We are obliged to weigh the evidence and form a conclusion as to the facts. It is not sufficient, as in most of the cases with us, to find evidence which presents a question of fact; it is necessary to go further before we can affirm a conviction and find that the evidence is of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt."

" The identity of the defendant as the person who committed the homicide was not in this case shown with sufficient certainty to preclude a reasonable possibility of mistake." (*People* v. *Seppi*, 221 N. Y. 62, 68.)

The judgment of conviction should be reversed, and a new trial ordered.

LEWIS, J. (dissenting). I dissent and vote to affirm the judgment of conviction.

The homicide occurred during the noon hour and was witnessed by at least three persons — the People's witnesses Richard J. Kavanagh and James W. Ryall, who were members of the Fire Department of the City of New York, and Mrs. Alice C. Kavanagh — all of whom were in or close to an automobile which was standing near the place where the crime was committed. These three persons were awaiting the return of their friend, fireman Hitter, who had gone to a bank to cash pay checks for Kavanagh, Ryall and other firemen. Each of the three witnesses saw Hitter stop his car at the curb seventy-five feet in front of the Kavanagh car. Their interest in Hitter's return with the proceeds of their pay checks naturally caused them to observe him and the movements of the man who later became his assailant. After Hitter had stopped his car the three witnesses saw a second automobile come to a stop to the left of and two feet away from Hitter's car. They then saw extended from the front right door of the second car a hand in which was a revolver pointed at Hitter who was then seated on the front seat of his own car. They heard a shot and saw the hand and revolver withdrawn and immediately from the second car a man emerged, with gun in hand, who ran around the rear of Hitter's car. When he had reached a point on the sidewalk where Hitter's limp body had slumped down near the right front door of his car, the three witnesses saw the man with the revolver fire a shot into the prone body of their friend and quickly reach into the latter's inside coat pocket from which a yellow envelope was extracted. They saw the assassin retrace his steps around the rear of Hitter's car and re-enter the automobile in which he had arrived at the scene. His

movements from the time he left his car, after the first shot was fired, until he returned to his car after he had fired the second shot and had extracted the envelope from his victim's pocket, must have consumed at least a full minute — or so the jury may have found. Within that time, according to the evidence, the assassin was within full view of, and was being constantly observed in the light of the noon hour by the three witnesses from their positions which concededly were not more than seventy-five feet away. The experience of seeing a man emerge from an automobile, with gun in hand, who not only proceeded to shoot their friend at close range but also withdrew from his pocket an envelope in which they had reason to be interested, was such as to arrest the attention of the three witnesses and excite their keenest powers of observation. In such circumstances it was natural that they should observe the movements of the assassin in the course of which he exposed both his left and right profiles and at one time presented to the witnesses a full front view of so much of his face as was to be seen beneath the brim of his hat. These three witnesses later identified the defendant as the man who shot the decedent.

True, there are minor inconsistencies among the three witnesses as to the exact type and color of apparel worn by the assassin and as to certain of his physical characteristics. However, I believe that the evidence given by these witnesses, when considered with the People's testimony offered to disprove the defendant's alibi, was sufficient to justify the jury's finding of the defendant's guilt beyond a reasonable doubt. " Even in a capital case, the decision by the jury of all questions of fact is subject to review by us only to the extent of determining whether the evidence fairly and reasonably supports their conclusion upon each of those questions." (*People* v. *Sanducci*, 195 N. Y. 361, 367.)

LEHMAN, Ch. J., LOUGHRAN, FINCH and RIPPEY, JJ., concur with CONWAY, J.; LEWIS, J., dissents in opinion in which SEARS, J., concurs.

Judgment of conviction reversed, etc.