The People of the State of New York, Respondent, *v.* Frank Davino, Appellant.

Argued April 30, 1942; decided July 29, 1942.

*Harry G. Anderson, Samuel Bader* and *Leon Fischbein* for appellant. The trial court committed reversible error in denying the defendant's motion for a mistrial after the court had found, with the concurrence of the district attorney, that a witness was mentally deranged and unworthy of belief. (*People* v. *Robinson,* 273 N. Y. 438; *People* v. *Fielding,* 158 N. Y. 542; *People* v. *Conrow,* 200 N. Y. 356.) The defendant's guilt was not established beyond a reasonable doubt. (*People* v. *Davino,* 284 N. Y. 486.)

*William O'Dwyer, District Attorney* (*Henry J. Walsh* of counsel), for respondent. The court correctly refused to declare a mistrial following the disclosures as to the mental irresponsibility of a witness. (*People* v. *Barnes,* 202 N. Y. 77; *People* v. *Smith,* 180

N. Y. 125; *People* v. *Rimieri*, 180 N. Y. 163; *People* v. *Priori*, 164 N. Y. 459; *People* v. *Dixon*, 231 N. Y. 111.)   The appellant's guilt was proved beyond a reasonable doubt.   (*People* v. *Lytton*, 257 N. Y. 310.)

DESMOND, J.   This defendant has, for a second time, been convicted of murder in the first degree, for the killing of Thomas J. Hitter, on October 31, 1938.   We reversed the first conviction (284 N. Y. 486, 487).   To quote the majority opinion on that appeal: " The question for the jury was one of identity, which is always a difficult one."   The victim was a New York City fireman who had been sent, in his automobile, to a nearby bank to cash the salary checks, amounting to about $3,000, of the members of his fire company.   When, on his return, he brought his car to a stop near the entrance of the engine house, another car pulled alongside. One of the two occupants of that car thrust a revolver into the fireman's car and shot him.   The assailant then jumped from the murder car, ran around to the right side of the victim's car and shot the latter again, as his body tumbled out.   The murderer took from the deceased an envelope containing the $3,000, ran back around the fireman's car into his own, and fled.

Defendant took the stand at both trials, and each time claimed that at the time of the killing, he was at a gas station, where he said he had gone with one Ludwig to meet the latter's stepfather. He told the jury that he had spent most of that day with Ludwig. Ludwig did not testify at the first trial, but on the second trial he appeared and denied so much of defendant's testimony as placed the two men together at the gas station about the time of the killing.   We will refer again to Ludwig.

At the first trial the proof relied upon to connect defendant with the crime, came from four witnesses.   Three of them testified more or less positively that they recognized defendant as the man who killed Hitter.   A fourth, fireman Coppola, did not see the shooting, but saw a man running from the back of Hitter's car and identified defendant as that man.   On the appeal from the first conviction, the only question was as to the sufficiency of these identifications to sustain the verdict.   This court decided that they were insufficient, that " the identity of the defendant as the person who committed the homicide was not in this case shown with

sufficient certainty to preclude a reasonable possibility of mistake " (284 N. Y. at p. 489, citing *People* v. *Seppi*, 221 N. Y. 62, 68). We must examine the record of the second trial, to see if there is in it sufficient additional credible testimony to make the required weight of evidence. We will not review, herein, the testimony of the four witnesses above referred to, who testified at both trials.

On the second trial the People offered the testimony of four additional witnesses. All of them were convicts, brought from prison to testify. One of them, Stein, said that on the day of the murder he saw defendant, near the scene, riding in a car driven by another at high speed. Stein had previously denied that he knew anything about the crime at all, and he had never told anyone this story, of seeing defendant in the vicinity of the crime, till he wrote the prosecutor that he wanted to make this disclosure. The second of the new witnesses, Ludwig, was the man who, according to defendant, was with the latter most of the day of the crime, including the time of the killing. Ludwig did not testify at the first trial. At the second trial he said that he was not with defendant at the time the murder was committed, but that shortly before defendant was arrested, defendant met him (Ludwig) and asked him to say, if asked, that they were together at that time. Between the first and second trials, however, Ludwig approached a prison chaplain and gave the latter a positive, sworn statement in writing that defendant and he had been together at the time in question, and that defendant was, to Ludwig's knowledge, absolutely innocent.

The two other new witnesses were Pascoe and Hoffman. Both testified that defendant had admitted the crime to them. Pascoe swore also that, some time before the crime, defendant had hidden, in Pascoe's cellar, a revolver, which, the witness noticed, was missing two weeks before this murder. Pascoe, significantly we think, said that shortly after the date of the killing, defendant had borrowed a nickel from him — difficult to reconcile with defendant's alleged theft of $3,000, just before. Pascoe, when questioned during the early investigations of the crime, had denied all knowledge of it. Hoffman, questioned at the trial about a robbery he himself had committed about the time of the alleged confession to him by defendant, fell into serious contradictions as to the time of the

confession and of the robbery. We say without hesitation that the evidence given by all four of these witnesses was of unreliable character and from most questionable sources. No reasonable explanation appears for their failure to tell their stories sooner, or for their contradictions and evasions.

One other new witness, Mokotoff, appeared for the People on the second trial and gave most damaging testimony against defendant; according to him, defendant had positively admitted the killing. Some days later, during the trial and after defendant had been cross-examined on Mokotoff's story, it was discovered that Mokotoff was mentally irresponsible and unworthy of belief. His testimony was then, on the district attorney's motion, stricken from the record and the jury instructed by the court, in the strongest terms, to disregard it. We do not agree with appellant that the court committed error in failing, at that point, to grant his motion for a mistrial. The trial justice did the best he could to destroy the effect of this strong testimony given by a witness who never should have testified and who, of course, would not have been called had the prosecutor known of his mental condition. But that testimony, plausibly given, rested in the jury's minds for the several days between its giving and the discovery that it had come from a man who was mentally deranged. The difficulty, or practical impossibility, of forgetting and disregarding this testimony is shown by incidents near the close of the trial when inadvertent references were made to this very testimony, so solemnly stricken out, theretofore. We see nothing in this matter of Mokotoff's testimony that would in itself justify a reversal, but the incident was not without importance, when the rest of the testimony was so weak.

On the whole record our conclusion is that the evidence against defendant, with the new testimony added, is no stronger than before. As was pointed out in this court's opinion on the first appeal, there is no proof here of flight or enrichment. We note again that one of the eye-witnesses testified, at both trials, that there was something wrong with the murderer's foot so that he ran in a peculiar manner; there is nothing to show that this defendant had any such deformity or peculiarity of gait. Seven weeks elapsed between the crime and the time when defendant was arrested and identified by these witnesses. The first trial was held

fifteen and a half months after the crime, the second, more than three years after the crime. Accurate identifications, after such delays, of a man seen only once in a moment of excitement, are difficult to make.

Unfortunate it will be if the men guilty of this heinous crime go unpunished. It would be much more unfortunate if a conviction were allowed to stand, in a case so full of doubt and uncertainty, on evidence that fails to meet the settled standards of our law.

The judgment of conviction should be reversed, and a new trial ordered.

FINCH, J. (dissenting). Upon a retrial, a jury of twelve men have for the second time resolved the facts in favor of the People. I had some doubt after the first trial whether the defendant was guilty beyond a reasonable doubt. Hence I voted to reverse and grant the new trial.

Upon the second trial there is the same evidence as upon the first trial, together with much additional evidence including the testimony of four additional witnesses. All of these witnesses were convicts brought from prison to testify. Arguments may also be made attacking the credibility of this testimony for other reasons. Such reasons are set out in the majority opinion. The court properly left to the jury the question whether they would believe or disbelieve any or all of this evidence. That was peculiarly a jury question, and that responsibility was for the jury. We cannot say as a matter of law that the jury was bound to disbelieve this evidence. Again a second jury of twelve men have found this defendant guilty. Upon this record there is ample evidence from which a jury could find defendant guilty beyond a reasonable doubt.

Appellant relies only upon one so-called error of law, namely, the failure of the trial judge to declare a mistrial following the disclosure as to the mental irresponsibility of the witness Mokotoff. In the first place, Mokotoff had never been adjudged mentally incompetent. An expert assigned to general sessions, who interviewed the witness, testified that in his opinion he was mentally irresponsible. By way of excessive caution, the Assistant District Attorney who tried the case then moved to strike out all the testimony of this witness. After the testimony of this witness was stricken from the record by the trial judge, the latter, in a most

painstaking manner, instructed the jurors as a whole to cast out of their minds all the testimony of this witness which the judge himself had ordered stricken from the record, and the foreman in reply stated that it could and would be done.   There was no error here, but if there were, we are directed to disregard it under the provisions of the Code of Criminal Procedure (§ 542) as not materially affecting the result, which is the guilt of this defendant as found by two juries.

The judgment of conviction should be affirmed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY and CONWAY, JJ., concur with DESMOND, J.; FINCH, J. dissents in opinion in which LEWIS, J., concurs.