THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH MARINO and EDWARD ZIMMERMAN, Appellants.

Argued June 4, 1942; decided July 29, 1942.

*Sydney Rosenthal* and *Benjamin J. Jacobson* for Edward Zimmerman, appellant. The evidence falls short of establishing beyond a reasonable doubt that the defendant committed the crimes. (*People* v. *Klvana*, 241 N. Y. 481; *People* v. *Feolo*, 284 N. Y. 381; *People* v. *Cassidy*, 160 App. Div. 651; *People* v. *Crum*, 272 N. Y. 348; *People* v. *Purtell*, 243 N. Y. 273; *People* v. *Seppi*, 221 N. Y. 62; *People* v. *Smith*, 55 Hun, 606; *People* v. *Jung Hing*, 212 N. Y. 393; *People* v. *Cassidy*, 160 App. Div. 651.) Reversible error was committed in permitting the district attorney to read the testimony of one of the complainants taken before the grand jury. (*People* v. *Walsh*, 262 N. Y. 140; *People* v. *Jung Hing*, 212 N. Y. 393.) It was reversible error to permit the District Attorney in his summation to charge that the complaining witnesses had been tampered with as a reason for their failure to positively identify the defendants. (*People* v. *Buzzi*, 238 N. Y. 390; *People* v. *Pignataro*, 263 N. Y. 229.)

*Sydney Rosenthal, Joseph A. Boccia* and *Joseph Contiguglia* for Joseph Marino, appellant. The evidence falls short of establishing beyond a reasonable doubt that the defendant committed the crimes. (*People* v. *Smith*, 7 N. Y. Supp. 841; *People* v. *Seppi*, 221 N. Y. 62; *People* v. *Klvana*, 241 N. Y. 481; *People* v. *Cassidy*, 160 App. Div. 651; *People* v. *Jung Hing*, 212 N. Y. 393; *People* v. *Montesanto*, 236 N. Y. 396.) Reversible error was committed in permitting the district attorney to read the testimony of one of the complainants taken before the grand jury. (*People* v. *Walsh*, 262 N. Y. 140; *People* v. *Jung Hing*, 212 N. Y. 393.) It was reversible error to permit the district attorney in his summation to charge that the complaining witnesses had been tampered with as a reason for their failure to positively identify the defendants. (*People* v. *Buzzi*, 238 N. Y. 390; *People* v. *Pignataro*, 263 N. Y. 229.)

*Charles P. Sullivan, District Attorney* (*James F. T. Delaney* of counsel), for respondent. The People's evidence was legally sufficient to sustain the finding that the appellants were, in fact, two of the persons who committed the crimes for which they were convicted. (*People* v. *Davino*, 284 N. Y. 486; *People* v. *Burt*, 51 App. Div. 106; 170 N. Y. 561; *State* v. *Orlandi*, 106 Vt. 165;

*People* v. *Franklin*, 188 Pac. Rep. 607; *People* v. *Becker*, 215 N. Y. 126.) The District Attorney was properly permitted to read the testimony previously given by one of the complainants before the grand jury. (Code Crim. Proc., § 8-a.) Under the circumstances, the District Attorney's reference to something which he invited the jury to infer had happened to affect the witnesses' testimony, if improper, did not present error grave enough to require that the judgments be disturbed. (*People* v. *Purtell*, 243 N. Y. 273.)

LEWIS, J. The two defendants Joseph Marino and Edward Zimmerman stand convicted of the crimes of assault in the first and second degrees. They were acquitted on eight other counts in the indictment which had charged them with abduction and rape in the first degree.

Omitting sordid details, we shall limit the recital of facts to those upon which rests the question whether, in a case involving uncertain proof of the identity of the two appellants as participants in the crime, a ruling by the trial court was reversible error which permitted the prosecuting attorney to read to the jury a substantial portion of the grand jury minutes.

About four o'clock in the morning of September 11, 1940, four men assaulted two women — the present complainants — who were homeward bound from an uptown restaurant in the city of New York. The assault occurred in an automobile which the complainants had been forced to enter. Of the four men who were present in the car when the assault was committed one was never apprehended. The remaining three defendants, Joseph Mineo and the two appellants, were taken into custody under the following circumstances: At about eight o'clock on the second evening following the assaults two city detectives, who had been assigned to investigate the case, accompanied the two complainants in an automobile to a point on Second avenue near the intersection of Seventy-sixth street. While the car was standing at the curb one of the complainants drew attention to a group of young men standing near a candy store on Seventy-sixth street. Pointing to one of the group she said " I think there is one of them on the corner." Leaving the complainants in the car the detectives approached the

group of young men, eight in number, and directed them to enter the candy store. The complainants then followed, their purpose being to ascertain whether, among the eight men being held in the store, there might be any of their four assailants. When the complainants, who concededly were in a state of hysteria, were within the room where the men were gathered, they struck three of the men in the face with their handbags and promptly left the premises.

The three men thus singled out from the group have been tried on the indictment mentioned above. From the judgment of conviction the defendant Mineo, who concededly bore a prominent scar on his forehead, has not appealed. As to him the complainants were positive in their testimony which identified him as one of their assailants.

The present appellants, Marino and Zimmerman, appealed to the Appellate Division, which unanimously affirmed their convictions. The case is here for review by permission of a member of this court.

Neither of the appellants has previously been convicted of a crime. Each denies any connection with the assaults upon the complainants; each gave evidence which, if believed, established that he was at home when the assaults occurred, and each swore that he did not know and had never seen either of the complainants until the night when, with other men, he was ordered by detectives to go into a candy store on Seventy-sixth street and there was accused by the complainants in the manner already described.

There was evidence that after the appellants had been arrested one of the complainants told a detective at police headquarters to look at Marino's arm which would be found scarred by wounds from a hypodermic needle. The evidence is not disputed, however, that when Marino was asked by the detective to bare his arms they showed no scars of any kind. One of the complainants also testified that in the course of the assault she had bitten " as hard as [she] could " the arm of the man who, according to her statement, " resembled " the appellant Zimmerman. But the proof is undisputed that Zimmerman's arms bore no evidence whatever of having been bitten.

At the trial, which took place four months after the arrests, the prosecution sought to prove by the complainants the identification of the appellants, Marino and Zimmerman, as being two of the four men involved in the assaults. Upon this vital point in the case the complainants at no time stated positively that either Marino or Zimmerman was among those who participated in the assaults. After stating on direct examination that the more she saw of the defendants the less sure she was of their identity, one of the complainants was asked whether she would swear that the defendant Marino was one of her assailants. To that inquiry she answered — " I couldn't swear. They look so much like them, but I couldn't swear to it." When the same complainant was examined as to her ability to identify the appellant Zimmerman, he was directed to stand before her at a distance of six feet and was moved into various positions to enable the witness to observe his face at front view and his left and right profiles. Then occurred the following examination: " Q. Now, I am going to ask you, Mrs. ................., is he, Edward Zimmerman, the defendant whom you have just looked at, one of the men who you say was in an automobile with you and your sister on the early morning hours of September 12th, 1940. That is all I am going to do. A. He looks very much like him, but I have got a doubt in mind. I could almost swear it is him. He is built like him and looks like him and everything, but I have got a doubt in mind. Q. You have got a doubt in your mind? A. I have. Q. You say the man who was with you was built like him? A. Built like him — the night I saw — first night I saw them dressed like the same man, built like him, looking like him, but when I see him in court, I sort of have a doubt. When I get out of the court and get thinking about it, then I am so sure. I am almost positive, but when I see him in court I kind of have a doubt in mind. I try to just keep thinking and thinking. It looks like him, and sometimes I am so sure it is him. Q. Sometimes you are not so sure, is that right? A. That is right. Q. Is that right? A. That's right. Q. Right now do you have a doubt in your mind as to whether he is the man? A. I have a doubt in mind. Q. You have a doubt in your mind? A. Yes, sir. * * * Q. All right. There is not any question now, though, that you have a doubt in your mind

as to whether he is the man or not? Mr. Dugan: That is objected to as having been already answered. The court: Overruled. A. I have a doubt in mind he is not the man. * * * Q. Did you ever see the man who looked like the defendant Zimmerman before that night — yes or no? A. Never. Q. The answer is ' No '? A. No.''

The other complainant, after being given the same opportunity to study at short range the face and profiles of the appellant Zimmerman, testified on the question of identity as follows: " Q. Now, will you please look at the defendant, Edward Zimmerman, and note his profile, color of his hair, color of his eyes, shape of his nose and his mouth and his chin, and tell me is he the man that was in the car, who had intercourse with you on the night of September 12th, 1940 — yes or no? A. I am almost sure, but I am not positive. Q. Do you have a doubt about him? A. Yes, I have. Q. You looked at him on Friday when you were on the witness stand here? A. Yes. Q. You have been looking at him from time to time today while you have been on the witness stand? A. Yes, sir. Q. You still have your doubt as to whether he was the third man in that car? A. Yes, sir.''

When she was asked to identify the appellant, Marino, the same complainant testified: " Q. Do you say, under oath, now, that Marino was the man who accosted you at 86th Street and Lexington Avenue? A. He looks very much like him. Q. Can you swear that he is the man? Mr. Dugan: I object to that as having already been answered, if your Honor please. The Court: I will allow it. A. No, I — Q. Can you swear that he is the man? A. I wouldn't swear. Q. You have your doubt? A. Yes, sir.''

It is thus seen that the only witnesses who could have testified as to whether the appellants were guilty of the criminal offenses with which they were charged, were the two complainants. As witnesses upon the trial their testimony was given when each appellant was in their presence and when the circumstances were calculated to enable the complainants to exercise freely their powers of observation and reflection. However, as we have seen, when they were asked to supply the requisite proof which would identify the appellants as participants in the assaults, they gave answers in which there was marked equivocation coupled with a frank admission of doubt.

In addition there was a refusal by each complainant to swear that the appellants were participants in the crime.

It was in this state of the record that the prosecuting attorney was permitted on redirect examination of one of the complainants — and in an apparent effort to strengthen her evidence on the question of identity — to draw her attention to testimony given by her before the grand jury. To that end there was read to that complainant in the presence of the trial jury extended excerpts from the grand jury minutes which related not only to the identity of the appellants but also to matters unrelated to that subject.

The appellants do not question the right of the prosecuting attorney under section 8-a of the Code of Criminal Procedure to confront a witness with any prior inconsistent testimony given before the grand jury. The point made is that here the testimony with which the complainant was confronted was in fact not inconsistent with her testimony given at the trial.

We do not agree with the appellants that a comparison of the testimony given by the complainant before the grand jury with her testimony on the trial, on the subject of the identity of the appellants, was entirely free from inconsistency. We conclude, however, that the rights of the appellants were prejudiced when, during the examination of one of the complainants by the prosecuting attorney, there was read before the trial jury excerpts from the grand jury minutes which went far beyond the scope of questions relating to the identity of the appellants. Indeed, by the trial procedure thus pursued — the propriety of which was duly challenged by objections and motions made in behalf of the appellants — there was brought before the trial jury, as cumulative evidence, an alleged statement of facts which amounted to a complete version of the assaults as given to the grand jury by one of the complainants at a time when she was not confronted by either of the appellants and was not subjected to the revealing test of cross-examination. Such procedure went far beyond the rights accorded by section 8-a or section 393-b of the Code of Criminal Procedure. The prejudice resulting therefrom to the appellants was aggravated later by a statement made by the prosecuting attorney in the course of his summation. Referring to what he indicated to be a significant difference between the testimony given by one of the complainants

before the grand jury, and her testimony given at the trial, the jury was told that " * * * somebody did something and whoever did it didn't do this case any good." That statement cast suspicion upon the appellants. The jury may well have drawn the inference therefrom that an effort had been made by the appellants, or by someone in their behalf, to suppress evidence in the case or to coerce witnesses. Lacking, as it did, the support of any evidence in the case, the statement was wholly unwarranted and was prejudicial to the appellant's rights. (*People* v. *Buzzi*, 238 N. Y. 390, 397; *People* v. *Pignatoro*, 263 N. Y. 229, 237.)

We cannot say that the errors to which reference has been made were unsubstantial. It follows that the judgments should be reversed and a new trial ordered.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.