THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PETER SPINELLO, Appellant.

Submitted May 29, 1951; decided July 11, 1951.

*Jerome J. Silver* for appellant. I. The People failed to prove a prima facie case. (*People* v. *Cassidy,* 160 App. Div. 651; *People* v. *Jung Hing,* 212 N. Y. 393; *Shottland* v. *Citizens Nat. Bank,* 40 Md. 540; *Di Carlo* v. *United States,* 6 F. 2d 364; *Matter of Roge* v. *Valentine,* 280 N. Y. 268.) II. Defendant was not identified with any degree of certainty. (*People* v. *Davino,* 284 N. Y. 486; *People* v. *Seppi,* 221 N. Y. 62; *People* v. *Spickler,* 255 N. Y. 408; *People* v. *Klvana,* 241 N. Y. 481; *People* v. *Cassidy,* 160 App. Div. 651; *People* v. *Caruso,* 184 App. Div. 512.) III. The People failed to prove defendant guilty beyond a reasonable doubt. (*People* v. *Klvana,* 241 N. Y. 481; *People* v. *Marino,* 288 N. Y. 411; *People* v. *Taddio,* 292 N. Y. 488; *People* v. *Carpenito,* 292 N. Y. 498; *People* v. *Knox,* 223 App. Div. 123; *People* v. *Williams,* 182 Misc. 841; *People* v. *Purtell,* 215 App. Div. 721; *People* v. *Lewis,* 275 N. Y. 33; *People* v. *Weiss,* 290 N. Y. 160; *People* v. *May,* 290 N. Y. 369.)

*George B. De Luca, District Attorney* (*George Tilzer* and *Herman J. Fliederblum* of counsel), for respondent. The guilt of defendant was established beyond a reasonable doubt. (*People* v. *Clougher,* 246 N. Y. 106; *People* v. *Ryan,* 274 N. Y. 149; *Fontheim* v. *Third Ave. Ry. Co.,* 257 App. Div. 147; *People ex rel. Fleming* v. *Dalton,* 158 N. Y. 175.)

DESMOND, J. Defendant-appellant Spinello, above named, appeals here from a divided-vote affirmance of his conviction of robbery in the first degree. The two opinions in the Appellate Division deal mainly with the meaning, and application to this case, of section 393-b of the Code of Criminal Procedure which was passed by the Legislature in 1927 (L. 1927, ch. 336) and is, in full, as follows: " § 393-b. *Testimony of previous identification.* When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification." This statute,

although mentioned in *People* v. *Marino* (288 N. Y. 411, 417), does not seem to have been considered or applied in this court. It is appellant's position that testimony admitted under section 393-b is not substantive evidence, or evidence in chief, but usable merely to bolster a witness' credibility, and that, if such be its effect, there was, on the whole case, no sufficient proof of guilt.

The theory of the prosecution was that appellant Spinello, with defendant Principe and a third man (called " John Doe " in the indictment) committed a holdup on the morning of April 25, 1947, in the premises of a radio company in a loft building in The Bronx, and took $400 in currency from the pockets of the complaining witness Hyman. The third man (John Doe) was never arrested. Appellant Spinello and defendant Principe were tried together. At the close of the trial the County Judge dismissed the indictment as to Principe (no one identified Principe as having taken part in the robbery, although he, with this appellant Spinello, was caught by the police a few hours later in an automobile which is claimed to have been the get-away car). As to appellant Spinello, the real question was identity, and the jury found him guilty.

We now summarize the testimony. The principal witness, Hyman, said that on the morning in question, two men came into Hyman's premises on an upper floor of a loft building, that one of them remained at the door, that the other one, who was not identified by any witness, inquired from an employee as to the whereabouts of Hyman, and that, when Hyman was pointed out, this unidentified criminal walked over to Hyman and told the latter to go into his office, whereupon Hyman and the intruder stepped into Hyman's office and the intruder took a gun from his pocket, told Hyman to turn around and face the wall, told him it was a holdup and demanded the payroll. This unidentified man then told a bookkeeper (witness Toscano) to mind her own business and she would not be hurt. Hyman, as he testified, told the unidentified person that the payroll was late and had not yet arrived, whereupon the thief looked through various drawers and took $400 (in ten- and twenty-dollar bills) from Hyman's pockets and then told Hyman to walk out with him to the front door as if they were talking in a friendly way. At this point in his testimony Hyman made what we consider

to be the first identification of this appellant as follows: " As we approached the other man near the door he joined us. Q. Are you talking about the defendant here? A. Yes " (meaning Spinello). Hyman went on to testify that the two intruders then walked with him up two flights of stairs, during which trip one of them pulled a ring off Hyman's finger. When Hyman complained, one of them hit him on the back of the head with a gun butt. Hyman was told to keep quiet, and, at that point, heard a door slamming down below, whereupon both of his assailants turned around and ran down the steps, whereupon Hyman opened a window on the landing and saw " two people " leaving a main door of the building and saw them run down the steps, out of the building, into a car with its door open, and then saw them get in the car in a hurry, and speed away. Hyman testified that he observed the license plate number and then went back into his office to make a note of the numbers thereon, that he did not remember the license number but that it contained two 4's, and that he had given the number to the police. As one of the Appellate Division opinions points out, there is a sort of gap in the continuity of the testimony at this point for, although the police later in the afternoon of that day stopped a car in which defendant Principe and appellant Spinello were riding, the police did not testify that the license number corresponded with the number given to the police by Hyman immediately after the robbery. Nevertheless, it seems self-evident that the police stopped that particular car because the license number thereon corresponded with the number given the police by Hyman.

Hyman further testified that, a few hours later on the day of the robbery, he received a telephone call from police officers as a result of which he went to a police station, talked with some policemen there and then was confronted with two men. When asked whether he saw in court the two men he had confronted in the police station, Hyman said, " Presumably they are the same two men." Then he said, " Well, if that is the two men I saw, that is the two men here." Hyman testified that at that visit to the police station he identified one of the two men and, when asked which one he pointed out appellant Spinello in the courtroom. Later Hyman testified that at the police station that day he saw appellant Spinello. Again, testi-

fying as to what Spinello had done during the course of the holdup, he said this: "The day I identified him I thought it was Spinello. I am not sure, after three years. I thought he was smaller than he is, as a matter of fact." The court then took over the questioning and asked Hyman whether he had recognized Spinello at the police station as the man who had been at Hyman's place of business and the witness said "Yes." The court then asked the witness whether he "now" (that is, at the time of the trial) stated that Spinello was the man who took part in the holdup or whether Hyman thought he was or presumed he was. The witness answered: "I said he is, Judge." The court then said: "All right. Let us get it definitely." We take it that at that point the witness had positively stated not only that he had recognized Spinello at the police station as the man who had been in the robbery, but also that Spinello was one of the robbers. During subsequent cross-examination, however, this witness Hyman, pressed by appellant's counsel as to the certainty of his identification said: "As I am sitting here I would not swear." The next People's witness, Rose Toscano, was Hyman's bookkeeper, and she corroborated his testimony as to the man walking in with a gun and saying it was a holdup, searching the place, telling her to keep quiet, searching Hyman, and walking out with Hyman, etc. She saw one man only, that is, the man who came in with the gun and went through Hyman's pockets, and no one claims that this was appellant Spinello. Witness Toscano did not identify anyone.

Another witness for the People was Klebanoff, who was working at the radio company that morning and did not see the holdup but, when told about it by the bookkeeper, went out into the corridor, whereupon two men ran past Klebanoff, one of whom was putting a gun away. When asked whether he saw in court the man whom he saw putting the gun away that day, Klebanoff answered that he thought it was appellant Spinello. He corroborated Hyman as to writing down the license number. The County Judge questioned this witness also, and asked him, as the Judge had asked Hyman, whether or not Spinello was the man the witness had seen, and the witness twice said he could not be sure.

A police officer then testified for the People that he had received, that morning, a radio alarm about an incident in The Bronx, said he received the license plate number of the automobile, then saw an automobile bearing license number N4433 containing two men, that defendant Principe was the driver and appellant Spinello was a passenger, that the officer stopped their car and took the two men to the police station. In the wallet of appellant Spinello this officer found a registration card for the car they were riding in, issued in the name of Angelo Lubovia, also a learner's permit in Spinello's name, also, on Spinello's person, $90 in ten-dollar bills which Spinello said he had won in gambling. This witness said that appellant Spinello told the officer that Spinello had borrowed the automobile from a neighborhood friend of his by the name of Frankie whose last name he did not know.

Another police officer, testifying for the People, said that when appellant Spinello was at the police station he (the witness) got Spinello to write, several times, the name "Angelo Lubovia" which was on the auto registration card, and this piece of paper, on which appellant wrote this name (and the street address on the registration), was put in evidence apparently in an effort to show that the signature on the license card was really written by this appellant. Spinello told this officer also that he was unemployed but had won the $90 in gambling. Spinello, to the officers, denied all knowledge of the robbery, and said that he had gone that morning to the home of defendant Principe and had waited until the latter got dressed, and then drove downtown with the latter. Another police officer testified that he went to the address shown on the automobile registration and could find no one named Angelo Lubovia. The testimony of officers Thompson and Lloyd showed discrepancies between the stories told separately by appellant to the two policemen as to his whereabouts and activities that morning and the People point to this as evidence of consciousness of guilt, etc.

Appellant neither took the stand nor called witnesses, although the police testified that he had denied to them any complicity in the crime. The efforts of appellant's counsel went no further than to try to cast doubt on the identification testimony and to urge on the court that there was a " scintilla " of proof only.

In his charge to the jury on the question of identification, the County Judge summarized the testimony of Hyman and Klebanoff, calling to the attention of the jury that both those witnesses, in one form or another, had said he was not sure it was Spinello. Elsewhere in the charge, the Judge told the jurors that, on the question of identification, they had a right to consider the facts and the circumstances of the crime and the right to consider " the identification, if any, made three years ago, and the recollection of any of the persons testifying now as to whether this is the defendant who then was charged with having committed that crime ". There was no exception taken to that part of the charge and no requests in reference thereto, so appellant's counsel acquiesced in the Judge's statement to the jury that, in passing on the question of identity, they could consider the testimony as to identification made in the police station on the day of the crime. However, it is fair to say that in his motion to dismiss made at the close of the testimony, counsel for Spinello did move to strike from the record all evidence relating to the previous identification of Spinello at the station house. The motion was denied.

The majority opinion in the Appellate Division held that there was ample proof to sustain appellant's conviction, and that it was proper to permit Hyman to testify to his previous identification of Spinello at the police station. The opinion then went on to discuss the theory and history of section 393-b of the Criminal Code (*supra*). The majority opinion pointed out that appellant at the trial made no effort to explore the circumstances of that previous identification and never really claimed that the man identified at the police station was not he. That Appellate Division opinion pointed out that there is other testimony connecting appellant with the crime, in that he made contradictory statements to the police officers as to his whereabouts that morning, that he was found in the escape car, and in that, although he was out of work, $90 in ten-dollar bills was found in his pocket which he had said he had won in gambling. Finally, the Appellate Division majority opinion stated that (as is evident from our inspection thereof) there is a resemblance between the signature " Angelo Lubovia ", as written by appellant for the police officer, and the signature of the same name

on the registration card. The opinion suggests that there is direct proof that the automobile in which appellant and Principe were found three hours after the robbery, was the same car that was used for the getaway. Actually there is no such direct proof, but the jury could, and presumably did, draw the inference, from the testimony of Hyman, that the car stopped by the officers was the same car as to which Hyman gave the police the license number, which contained two 4's, and that the police, having that number, stopped an automobile bearing the number N4433.

The dissenting opinion at the Appellate Division quoted some of the testimony mentioned above, given by Hyman for identification purposes, and pointed out that, before section 393-b was adopted, Hyman's testimony that he had previously pointed out appellant at the police station would have been inadmissible as hearsay (*People* v. *Jung Hing,* 212 N. Y. 393), also that the Federal courts (see *Di Carlo* v. *United States,* 6 F. 2d 364; *United States* v. *Forzano,* 190 F. 2d 687) have an even broader rule than that of section 393-b, since in the Federal courts, under some circumstances, other persons may testify to a previous identification by the identifying witness. Wigmore on Evidence (3d ed., Vol. 4, § 1130, citing many British and American cases for his point of view, apparently adopted later by our Legislature) recommends a wide use of testimony of previous identification. The dissenting opinion, recalling that the Baumes Commission, in this State, had recommended the adoption of section 393-b, expressed the belief of the dissenting Justices that the testimony received under section 393-b should be considered not evidence in chief but merely, we suppose, some kind of corroboration, or further assurance of credibility. The language and meaning of section 393-b, however, are quite plain: " When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification." There is nothing in that language or the Baumes Commission's recommendation, or the Federal decisions to suggest that such proof of previous identification is anything other than substantive proof of identification, and we know of no good reason for imposing any condition on its use (see Wigmore's note on the *Jung Hing* case, Vol. 4, bottom

p. 213). Section 8-a of the Criminal Code, referred to in the dissent here, has to do with a different matter entirely, that is, the impeachment of a witness, by the party calling him, by a showing of a prior inconsistent statement in writing or under oath. The section 8-a situation is where a witness fails to give the testimony expected of him by the party calling him; the party calling him may then show, for impeachment purposes, that the same witness, on a previous occasion, in writing or under oath, made an inconsistent statement. In section 8-a the Legislature said in so many words that prior inconsistent statements of a witness could under certain circumstances be used for " impeachment ". Section 393-b, with which we deal here, has no such limiting language but is merely a legislative rule of evidence, subject to no expressed limitations. The whole purpose of the enactment of section 393-b seems to have been to remove the brand of hearsay applied to such testimony in *People* v. *Jung Hing* (*supra,* p. 401 *et seq.*), and to create a statutory exception to the rule prohibiting proof that one's witness had made similar statements earlier (2 Ford on Evidence, p. 707). We conclude that section 393-b means what it says and does not restrict the use of the testimony made permissible by it.

There is, of course, another rule of evidence discussed in *People* v. *Singer* (300 N. Y. 120), which says that where the testimony of a witness is assailed as a recent fabrication, it may be confirmed by proof of similar declarations before the motive to falsify existed. That *Singer* rule is somewhat similar in terms to the statutory rule of section 393-b, but section 393-b is limited to identifications, and the condition for the use of section 393-b is not an attack on the principal testimony as a recent fabrication, but a dispute as to the truthfulness or accuracy of identification testimony.

The dissenting opinion here, after making the suggestion that section 393-b testimony is not evidence in chief, goes on to say that, regardless of that, the testimony here of the prior police station identification would not in itself be sufficient to support a conviction. We need not pass on that question, since there is other substantial proof here, and taking the whole testimony of Hyman together with all the other evidence in

the case (as the court's charge without objection directed the jury to do) there is enough for a conviction.  As we read the record, the witness Hyman did identify appellant both as having taken part in the robbery and as having been the same man identified by Hyman at the police station later on in the same day.  It is true that when questioned by the court and later by appellant's counsel, Hyman, a careful witness, said in effect, that he was not absolutely sure at the trial that Spinello was the robber but that he was entirely sure that Spinello was the man he had identified at the police station, and that his recognition of appellant at the police station had been a positive one. Hyman had ample opportunity for a good look at appellant, and his police station identification was made only a few hours later.  Appellant, in arguing against the sufficiency of this identification cites such cases as *People* v. *Davino* (284 N. Y. 486, 288 N. Y. 423), and *People* v. *Klvana* (241 N. Y. 481), but those were capital cases where the weight of evidence was open to us.  It is not so open on this appeal.

There is no rule of law which requires an identification to be positive beyond any shadow of doubt (see Underhill on Criminal Evidence [4th ed.], p. 176; 1 Wharton on Criminal Evidence [11th ed.], p. 328; *People* v. *Strollo,* 191 N. Y. 42, 62; *People* v. *Whigham,* 1 Wheel. Cr. Cas. 115; *People* v. *Wilson,* 3 Parker Cr. Rep. 199, 206).  An honest witness called on to identify some one he has seen only once may readily admit that, while he is quite sure of identity, he cannot be absolutely sure (see as to a witness: " conscientious against swearing positive," *People* v. *Whigham, supra,* p. 116).  Here there was more, since the witness said he had positively identified appellant at the police station and was sure that the man being tried in the courtroom was the man he had identified at the station.  Furthermore, there was other evidence connecting Spinello with the crime, in that he was, three hours after the crime, in a car (registered in a probably fictitious name) which the jury could say was the escape car, also in his conflicting statements as to his whereabouts that morning, a conflict which the jury could consider as some evidence of guilt (see *People* v. *Deitsch,* 237 N. Y. 300).  On the whole case we cannot say that the proof is insufficient as matter of law.

The judgment should be affirmed.

CONWAY, J. (dissenting). One Hyman, while employed by a corporation in The Bronx in 1947, was the victim of a robbery in the office of his employer at eleven o'clock in the morning. Two men participated in the robbery. When Hyman was called to testify in 1950, following the arrest of the defendant, he testified that he was not sure that the defendant was one of the men at his place of business when the crime was committed and would not swear to that fact. Two men were then on trial for the commission of the crime — the defendant Spinello, and one Principe. Hyman was then asked whether he went to the police station on the day of the robbery after being informed that the police had two men for him to look at. Hyman said that he saw two men there and he presumed that they were the same two men then in court. He stated that he identified one of those two men at the station house and indicated the defendant Spinello; that he spoke to neither of the two men then or at any time. He said that he assumed it was Spinello who was standing at the door and that that day he identified Spinello he thought he was the man but was now not sure after the lapse of three years.

I agree with Justice CALLAHAN in his opinion below as to the purpose of the enactment of section 393-b of the Code of Criminal Procedure. Our court, in 1914, reversed the case of *People* v. *Jung Hing* (212 N. Y. 393) because on a trial where the issue of identification was close, evidence was permitted that witnesses who testified as to the defendant's identity had made similar statements in the police station. Our court pointed out that such statements in the police station were nothing more than the unsworn confirmation of testimony of witnesses who had not been impeached except by the usual contradictions of opposing witnesses and that it was error of such serious import that a reversal was required even though no objection or exception had been taken. (The case was a capital one.) Judge WERNER, who had written the opinion in *People* v. *Katz* (209 N. Y. 311), distinguished that case.

The Legislature added section 393-b of the Code of Criminal Procedure in 1927, by chapter 336 of that year. It was solely in order to permit a witness in a similar situation to testify that he had previously identified the defendant so as to bolster his credibility. It was never intended that a defendant could

be convicted upon the testimony of one who failed to identify him at his trial as the perpetrator of a crime when a witness under oath, because in a police station three years before, when not under oath, he had identified him as such perpetrator. Yet that is what the Trial Judge charged in this case.

It is the law in this State both by Constitution and statute that an accused may only be convicted upon testimony given under oath by witnesses who confront him and who are subject to cross-examination upon their testimony then given. The accused may not be convicted upon sworn testimony that the witness when unsworn said that the accused was the perpetrator of the crime. That is what was done here and that was the theory upon which the District Attorney and the Judge proceeded (see folios 361, 362, 367, 368).

The District Attorney in his brief in our court at page 19 makes that clear. He concedes the factual situation as I have indicated it both as to identification and testimony in the following three paragraphs.

" The statement of the appellant that ' there was no sworn testimony that Spinello was at the scene of the crime,' is not borne out by the record.

" The record shows that the complainant swore, at the trial, that he identified the defendant Spinello at the station house.

" He also identified him at the trial, although he stated that because of the lapse of time he was not sure."

On that concession it is quite apparent that the People have not made out a prima facie case against the defendant Spinello. In other words the District Attorney realizes that if the testimony of Hyman on the stand was all that he had, excluding the testimony as to the unsworn identification, there would be no case against the defendant. That is why the motion to dismiss at the end of the People's case should have been granted.

Except as indicating the theory upon which the case was tried by the District Attorney, the charge is not important since the motion to dismiss at the end of the People's case should have been granted. It is unimportant too whether the defendant called witnesses or whether, as mentioned in the opinion below, he made no effort through his attorney to explore the circumstances of the identification in the station house. Since no witness under oath on the trial pointed out the defendant as

the perpetrator of the crime, whether or not the defendant made conflicting statements as to his whereabouts on the morning of the crime had no probative force. The jury could not consider such conflicting statements as proof of guilt because no one on the trial under oath had testified that the defendant was present at the scene of the crime when it was perpetrated. For that reason *People* v. *Deitsch* (237 N. Y. 300) is inapposite. There an adult witness under oath placed the defendant at the scene of the crime.

The indictment against Principe was dismissed at the close of the People's case.

I vote to reverse and to dismiss the indictment upon the ground that the People failed to establish the guilt of the defendant beyond a reasonable doubt. The motion to dismiss at the close of the People's case, which was denied, with exception taken, should have been granted.

LOUGHRAN, Ch. J., LEWIS, DYE, FULD and FROESSEL, JJ., concur with DESMOND, J.; CONWAY, J., dissents and votes to reverse and dismiss the indictment in a memorandum.

Judgment affirmed.