THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS ANGORA, Appellant.

First Department, April 11, 1961.

*Herbert A. Lyon* (*A. William Santoro* with him on the brief), attorney for appellant.

*Harold Roland Shapiro* of counsel (*Frank S. Hogan, District Attorney*), for respondent.

*Per Curiam.* We would not reverse the judgment convicting defendant of the crimes of robbery in the first degree and criminally possessing a pistol on the basis of any one of the several errors committed in the admission of evidence or upon the improper assertions made by the prosecutor in his opening statement to the jury. The aggregate of these errors, however, together with the prejudicial climate created by the prosecutor in pressing technically unobjectionable questions to a point where they and the answers they elicited inevitably suggested inadmissible testimony to the jury, compel a reversal.

Defendant was charged with participating in an armed robbery committed in the apartment of a man named Peers. During the trial Peers identified defendant unreservedly as one of the two robbers. There were other circumstances proven by the People that tended to connect defendant with the commission of the crime; and the jury upon all the evidence had ample ground for finding the defendant guilty beyond a reasonable doubt. Certainly, the verdict was not against the weight of the credible evidence.

In his opening statement the prosecutor said that Peers and his friend, a Miss Marino, had gone to the Bureau of Criminal Identification immediately after the robbery and studied 300 to 400 photographs of men, none of which was a picture of defendant. He went on to state that two days later a Detective Langan had taken a picture from the pocketbook of one Marie Wirth, a business partner of defendant and an acquaintance of Peers; that Detective Langan went to the Bureau of Criminal Identification with the picture, and obtained a photograph there. Subsequently, the prosecutor stated, Peers was shown " this particular photograph ", together with six or seven others. Upon defendant's objection and motion for a mistrial — which was denied — the prosecutor tried to justify the propriety of his statements by arguing that he was merely saying Peers was shown photographs, and not that he had made any identification of defendant from among those photographs.

It must have been plain to the jury that the prosecutor was as much as telling them that Peers had made a prior identification of defendant from a Bureau of Criminal identification photograph. It has been held error for a prosecutor in his opening statement to the jury to advert to the showing of pictures to a complainant under such circumstances (*People* v. *Sullivan*, 5 A D 2d 847). It constitutes a promise of proof that may be inadmissible upon the trial. In *People* v. *Hagedorny* (272 App. Div. 830), it was said of testimony given on the direct examination of a People's witness, before defendant had tried to impeach him, that " [w]hile it tended to identify the defendant, it was not evidence that the witness had on a previous occasion identified ' such person ' (Code Crim. Pro., § 393-b) ". Such testimony was therefore held inadmissible.

Upon his direct examination Detective Langan was permitted to testify, over objection, to having exhibited the two groups of photographs to Peers and Miss Marino. While he did not testify that they identified defendant from any of the photographs, the jury was invited to infer that such an identification had been made from the nature of the questions and answers — as in the case of the prosecutor's opening statement. The prosecution, on the direct examination of Peers and Miss Marino, had elicited testimony that the photographs had been shown them; but it stopped short of asking whether they had identified any as a picture of defendant. It might well be that if defendant's hand had not been forced by such suggestive statements and testimony, he would not have cross-examined the two witnesses above mentioned about their viewing the photographs.

It cannot be said that this cross-examination, conducted under stress of such circumstances, gave the People the right, through Detective Langan's testimony, to reinforce the identification of defendant's photograph (cf. *People* v. *Bertlini,* 218 N. Y. 584, 589). Absent circumstances not presented by this case, testimony as to prior identification from pictures is not admissible under section 393-b (*People* v. *Cioffi,* 1 N Y 2d 70; *People* v. *Hagedorny, supra*). The rule enunciated in *People* v. *Jung Hing* (212 N. Y. 393), prohibiting testimony as to prior identification in the absence of specified special circumstances on the ground it is "a self-serving performance of no probative value" (p. 401), was not relaxed by section 393-b with respect to the testimony of other witnesses as to previous identification by the complainant (*People* v. *Spinello,* 303 N. Y. 193; *People* v. *Trowbridge,* 305 N. Y. 471, 476; *People* v. *Sarra,* 283 App. Div. 876).

Miss Marino did not identify defendant upon the trial. This circumstance tended to aggravate the prejudice caused by Detective Langan's testimony strongly suggesting to the jury that she had previously identified defendant at the police station. The prosecutor, in examining Miss Marino, fortified the suggestion by asking her whether she was *absolutely* certain of defendant's identification and whether she could state *absolutely* that he was the robber. The inferences that could be drawn by the jury from these questions, coupled with Langan's testimony of what transpired in the police station, were that Miss Marino was reasonably but not absolutely positive of identification or that she had been intimidated or otherwise persuaded to fail to identify defendant.

The language of Chief Judge DESMOND in *People* v. *Steinhardt* (9 N Y 2d 267, 272) can most appropriately be applied to this case: "A decent respect for the courts themselves and for the law itself, aside from defendant's rights, require that a trial like this be declared a nullity regardless of strong evidence of guilt."

The judgment of conviction should be reversed and a new trial ordered.

BOTEIN, P. J., BREITEL, RABIN, STEVENS and BERGAN, JJ., concur.

Judgment of conviction unanimously reversed upon the law and in the interests of justice, and a new trial ordered.