OPINION OF THE COURT
John Copertino, J.
The court has for its consideration after a hearing at which the defendant neither testified nor called witnesses the admissibility of identification testimony of William J. Collins, the only witness on this hearing, who witnessed the crime the defendant has been accused of.
The court’s findings of fact and conclusions of law follow.
At 2:00 a.m. on February 10, 1981, William J. Collins took his taxicab to the Armory Pub to collect its bartender, Mr. William Phillips. Upon arriving in front of the premises he — as per usual — saw that the pub’s exterior lights were out, sounded the horn and waited in his cab — as was his wont — for Mr. Phillips to emerge. No one exited the pub. At this point, Collins noticed a black male standing at a corner nearby the premises in question. Collins then saw the male go to the front door of the premises, look in, and then approach the Collins vehicle. The black male asked Collins for a cigarette and then informed him that “Captain Bill” — as Phillips was referred to — would not be needing a “cab” for about one-half hour. The black male departed and when he was about one-half block from *1039 Collins, the latter went to the door of the pub and looked into the pub through the door’s diamond-shaped light and saw a white man about six feet two inches tall weighing about 180 pounds with light brown hair, wearing a red and white plaid shirt standing over a man on the floor and holding the latter’s shirt with one hand and a wooden bar stool in the other. A struggle was going on but the man on the floor was the worse for it. From this perspective Collins could not see the face of the man holding the stool inasmuch as his back was to Collins, nor could he see who the man on the floor was. Both men were about 10 feet away from Collins and the interior of the premises was illuminated by lights behind the bar, cash register lights, and four additional lights hanging over the bar — sufficient illumination for Collins to see that the man on the floor was Phillips when Collins moved to a window to the right of the door and continued his observations. While Collins, from this perspective, could see that it was Phillips on the floor, the other man’s back was still to Collins and the latter still could not see the former’s face. Collins looked into the premises and returned to his vehicle where he called his dispatcher and told him that there was a robbery in progress at the Armory Pub. The dispatcher ordered Collins to return to the office, Collins did so and within 20 to 25 minutes returned to the pub at the direction of the police where he again saw the other man and without any prompting by the police, Collins identified this man as the man he had seen earlier standing over Phillips. Collins observed the incident within the pub for approximately one minute. During the hearing Collins could not positively identify the defendant from the witness stand but was able to state that defendant looks like and is similar to the man he saw assaulting Phillips.
This court concludes first that there is no impediment to Collins testifying pursuant to CPL 60.25 that he observed the person who had assaulted Phillips in police custody at the Armory Pub some 25 minutes later so long as he is now certain that the man he saw in custody at the pub is the same man he saw assaulting Phillips 25 minutes earlier. • Apart from the confrontation issue, the question here is whether an “identification” can be made where the witness *1040 does not see the perpetrator’s face (cf. United States v Williams, 596 F2d 44, 49). We know that differences in appearance from one person to the next are attributable to more than differences in faces. We also know that we can recognize and know people in familiar surroundings without seeing their faces. There are a myriad of details that make up the entire person. A combination of details excluding facial features can reveal a person’s identity as surely as a person’s face. There is no sound reason why facial features should be a sine qua non for identification.
Identification may be based on “height and weight * * * size * * * walk, or *** clothing.” (1 Wharton, Criminal Evidence [13th ed], § 188). The identification here was made on the basis of a combination of features other than facial: unusual height, hair color, weight, and distinctive apparel. The fact that a person conforming to the image left upon the mind of the observer was seen by him in the very same place within 25 minutes thereafter seems reliable enough to permit receipt of testimony to the effect that the person seen on the second occasion was the same person as was seen on the first occasion. The probabilities are such that the observer could safely conclude that it was one and the same person that he saw on both occasions. The possibilities seem low to this court that it was a different person that was seen on the second occasion given the circumstances that were presented here. Of course, it will ultimately be for the trier of the facts to weigh all of the surrounding circumstances and decide whether it was in fact the same person that Collins saw on both occasions. In doing so, the trier should not be denied the evidence sought to be suppressed which will be accompanied by appropriate instructions by this court. Turning then to the confrontation issue, this court is of the opinion that “there was no constitutional infirmity in either the one-on-one showup at the scene in view of its proximity in time and location” (People v Brnja, 50 NY2d 366, 372). The viewing here was on the scene and within a short time thereafter, a scant 25 minutes. “Speedy viewings, on the scene if possible, benefit both law enforcement and the defendant” (People v Blake, 35 NY2d 331, 337). The circumstances here were favorable to a showup: the time of night; apprehen *1041 sion of the culprit within a maximum of 25 minutes of the act; availability of an eye witness and the possibility of a current identification by the person reporting the criminal act. (See People v Digiosaffatte, 63 AD2d 703, 704.) The identification here was made at a time when the witness’ recall had to search back only minutes — “a procedure which tended to insure that the identification emenated from the witness^] own observations made during the commission of the crime” (People v Smith, 46 AD2d 639). Indeed, it is significant that the identification was made before there was any change in the apparel worn by the defendant and in the same surroundings that the acts complained of were committed. The identity of time and place was complemented by the identification of the actor by a witness to the event.
The final comments concern the admissibility of testimony by this witness to the effect that while he cannot at this time positively identify the defendant as the person he saw on the night in question he can nevertheless say that defendant looks like and is similar to the person he saw and identified during the early morning hours of February 10, 1981. In view of the fact that there were no pretrial infirmities in the identification procedure, there is no reason for excluding testimony to this effect. Failure to state with certainty go to weight and not admissibility (People v Strollo, 191 NY 42; People v Spinello, 303 NY 193; People v Gallo, 75 AD2d 148).
Accordingly, defendant’s motion to suppress the identification testimony of William J. Collins is denied.