JEFF PENINGTON AND FRANK HAND, *Plaintiffs in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

January Term, A. D. 1926.

Opinion Filed March 10, 1926; Petition for rehearing denied June 23, 1926.

*Mathis & Weeks,* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *Marvin C. McIntosh,* Assistant Attorney General, for the State.

LONG, Circuit Judge.—The defendants, plaintiffs in error here, were tried in the Circuit Court of Holmes County, upon an indictment charging defendants with an assault with intent to murder one David G. Jones. The indictment is in two counts, the first count charges the defendants as

principals in the first degree, the second count charges Jeff Pennington as a principal in the first degree and the defendant Frank Hand as principal in the second degree. Upon a trial they were convicted under the second count of the indictment.

The defense interposed by the defendant Jeff Pennington is that of self-defense, while the defense of the defendant Hand is that of an alibi.

The only error assigned is the ruling of the Court denying motion for a new trial, the first six grounds of which are directed to the sufficiency of the evidence to sustain the verdict. The seventh, eighth and ninth grounds of the motion are directed to the Court's refusal to grant a change of venue, to grant motion of defendants for continuance, and to its refusals to give charges numbered four, five and six, requested by the defendant.

The first six grounds of the motion for a new trial attack the sufficiency of the evidence to sustain the verdict. Insofar as the defendant Jeff Pennington is concerned the evidence is uncontradicted by Pennington's statement, and is ample to support the verdict of the jury. As to the defendant Frank Hand, convicted as a principal in the second degree the record discloses that the offense was committed on the 6th day of December, 1921, that at the time and for about two years prior thereto the prosecuting witness Jones was a tenant of this defendant living in the house, cultivating a part of the plantation and running the mill. That during the year 1921 the defendant Pennington was also a tenant of Hand's, cultivating a part of the same plantation. That a month or more prior to the shooting of Jones these defendants entered into an agreement that Pennington was to take over the entire place as well as the operation of the mill, and that he, Pennington, was to have his father occupy the house in which Jones lived.

Immediately thereafter the defendant Hand began his efforts to have Jones vacate the house and in furtherance of this effort he locked the mill wheel, ordered Jones to vacate the premises, gave his wife a notice and posted a notice on the door of the house commanding him to vacate within three days, all of which are circumstances tending to show some feeling against the prosecuting witness Jones.

On the 6th of December, 1921, Pennington proceeds to move his father, who is the father-in-law of Hand, to these premises. The wagons driven by himself and his nephew and the buggy driven by his father reached the defendant Hand's house about seven o'clock in the evening some four miles from the home of Jones where the shooting occurred. From this point the defendant Hand accompanied Pennington until they arrived within some two hundred yards of the Jones home. At this point the evidence is conclusive that both defendants left the wagon. That Pennington secured Hand's double barrel gun and that there was a single barrel gun on one of the wagons to which wagon Pennington after obtaining the double barrel gun returned, presumably to leave a lantern, and then goes in the direction taken by Hand. Shortly thereafter the three shots were fired, two striking the prosecuting witness Jones and one striking the boy, Fletcher Jones. Two of these shots were in quick succession; the third after a little pause.

That there were two guns available, one a double barrel gun belonging to Hand and used by Pennington, and a single barrel gun, the property of the father-in-law of Hand. The three exploded shells were found in the yard some few feet from the door, two alike and one different. That the defendant Hand left to go in the direction taken by the defendant Pennington, just prior to the shooting, that he returned with him after the shooting, immediately leaving for his own home, taking the gun used by Penning-

ton and hiding it under the floor of his car house, his false answers to the officer investigating the case, his cautioning the boy Cowart not to talk, and on the following day giving money and food to the defendant Pennington to enable him to make his escape are circumsatnces pointing most strongly to his guilt as a participant in the assault.

Two witnesses who were acquainted with the defendant Hand, familiar with his voice for a number of years testify positively to his being present on the porch of the house conversing with the defendant Pennington a few minutes before the firing of the shots. Evidence of this character, identifying one by the sound of his voice is not to be considered as circumstantial evidence but is direct and positive proof of a fact.

> "A witness may be permitted to identify an accused solely from having heard his voice, and such testimony is admissible and legitimate to establish identity. Such evidence is not the statement of mere matter of opinion, but is the statement of a conclusion reached directly and primarily from an operation of the sense of hearing. Neither is such evidence to be considered as circumstantial, but is direct and positive proof of a fact and its probative value is a question for the jury."—Mack vs. State, 54 Fla. 55, 44 So. 706."

Proof that the defendant Hand was present at the very moment of the firing of the shot is unnecessary.

> "Those who advise, encourage, aid or abet the killing of another are as guilty as though they took his life with their own hand. A principal in the crime of murder need not be specifically a party to the killing if he is present and consenting to the assemblage by which it is perpetrated in pursuance of the common design."

Ruling case law 1, accessories 9.

"The person charged as a principal in the second degree must be present aiding and abetting the crime or in such contiguity as to enable him actually to render aid, but while the law requires the presence of the aider or abettor, in order to render him a principal, it does not require a strict, actual immediate presence such a presence as would make him an eye or ear witness of what occurs, for if the abettor at the time of the commisison of the crime were assenting to it, and in a situation where he might render some aid to the perpetrator, ready to give it if necessary, according to an appointment or agreement with him for that purpose, he would in the judgment of the law, be present and aiding in the commission of the crime."

Ruling case law 1, accessories 13.

"While a principal in a murder trial must either have actually committed the felonious act or else have been present aiding and abetting his partner in the crime, the presence of the aider and abettor need not have been actual but it is sufficient if he was constructively present, provided the aider, pursuant to a previous understanding, is sufficiently near and so situated as to abet or encourage, or to render assistance to the actual perpetrator in committing the felonious act or in escaping after its commission.—Pope v. State 84, Fla. 428, 94, So. 865.

The evidence relied on by the defendant Hand to establish an alibi is the testimony of the wife of Jeff Pennington, and that of his father-in-law, which testimony places

him only a very short distance from the scene of the crime at the very moment the shots were fired.

The testimony is sufficient and ample to sustain the verdict as against both defendants.

There is no error in the ruling of the court in denying the motion for change of venue. In denying motion for continuance or in its refusal to give the charges requested by defendants Numbered Four, (4) Five (5) and Six (6).

The motion for a change of venue was addressed to the sound discretion of the court and was a question to be determined by the Court upon the evidence presented, which evidence as the record discloses was ample to justify the order denying the motion.

> "An application for a change of venue is addressed to the sound judicial discretion of the trial Court and the refusal of such application will not be held to constitute reversible error by the appellate Court, unless it is plainly made to appear from the transcript of the record that the trial Court acted unfairly and abused such discretion."
> Chisolm v. State 74, Fla. 50, 76 So. 329.

The motion for a continuance addresses itself to the same question passed on by the trial Court when considering the motion for a change of venue as well as the inability of counsel to prepare for trial.

The crime was committed December 6th, 1921, the order denying the motion for continuance was signed by the Judge on the 15th day of February, 1922, and the trial set for February 22, 1922, allowing counsel a full week for concerting the defense before the actual trial was begun.

> "Where a continuance of the cause on the ground of want of preparation for the trial of the defendant, is denied the appellate Court will not disturb the ruling where it appears that the trial

Judge allowed ample time for concerting the defense before and after the actual trial was begun." Pope v. State 84, Fla. 428. 94 So. 865. "The rule prevailing here in granting continuances in criminal cases is the same as the one that obtains in civil cases, except that in criminal cases the grounds for the motion should be scanned more closely than in civil cases, on account of the superior temptation to delay."

"An application for a continuance of a cause is addressed to the sound discretion of the Court, and the action of the trial Court thereon will not be reversed unless there has been a palpable abuse of that discretion to the injury of the accused."

Adams v. State, 56 Fla. 1, 48 So. 219. Hall v. State, 70 Fla. 48, 69 So. 692.

The charge requested by defendant, number 4, is addressed to the first count of the indictment. As the defendants were convicted on the second count of the indictment and not upon the first count a refusal to give this charge was harmless. As to the fifth and sixth charges requested by defendants, the charges of the Court given of its own motion together with the special charges given at the request of the defendant fairly cover the law of the case.

"Where, considering the entire charge of the Court, including special charges given at the request of defendant, it fairly covers the law of the case it is not error for the trial Court to refuse to give other requested charges already substantially given."

Pinkney v. State, 83 Fla. 550, 92 So. 160.

The judgment of the Circuit Court is affirmed.

BROWN, C. J. AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur;

BUFORD, J., disqualified.