Leslie William **REAMER**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 12583.

United States Court of Appeals
Sixth Circuit.

Feb. 16, 1956.

Robert G. Sislock, Pontiac, Mich. (James A. Jameson, Detroit, Mich., on the brief), for appellant.

George E. Woods, Detroit, Mich. (Fred W. Kaess, Detroit, Mich., on the brief), for appellee.

Before SIMONS, Chief Judge, McALLISTER and STEWART, Circuit Judges.

SIMONS, Chief Judge.

On June 28, 1954, the West Road Branch of The Trenton State Bank, in Trenton, Michigan, was robbed by two masked men, carrying guns. The appellant and one Simon Thompson were indicted and on October 19, 1954, convicted by a jury. The appellant independently appealed. The crucial question, as we view it, is whether the appellant was identified as one of the robbers by evidence that was substantial. A motion for acquittal made by the appellant at the conclusion of the Government's case was overruled and he received a sentence of twenty years.

Three of the bank's emloyees were present at the time of the robbery ⁕ ⁕ ⁕ Mrs. Agnes Morrison and Mrs. Olga Barker, tellers, and Mr. Fred Pluskat, the bank's branch manager. Mrs. Morrison was typing when she heard a slight noise, looked up and saw a man with a gun, 2 feet away. He was dressed in dark clothing, with a hat pulled down and a blue handkerchief covering most of his face, the only parts of it showing being the eyes. She was unable to state their color, doesn't remember whether he wore glasses, or was gloved. The man said: "This is it. Get to the floor." She immediately complied, lying face down. She heard Pluskat ordered to the rear of the bank and assumed that the commands were spoken by another man. She then heard the words "Don't be afraid, everything is going fine. There is no use to be afraid, nobody is going to get hurt." She then heard the name "Tommy" spoken while she lay on the floor. She never again saw the man who confronted her. She remembered that his voice had no peculiar qualities about it except that she felt it was reassuring. She estimated the time she saw this man was no more than fifteen seconds.

Mrs. Barker was working at the adding machine when she heard a sound, turned and faced an armed masked man who ordered her to "get down on the floor." Not believing him at first, she stood still and the man said: "This is it. Get down on the floor." This time, she did so and her hands were tied behind her back as she lay on her stomach. She heard him assure Mrs. Morrison that as long as they did as they were told they would not be harmed. She also heard one man address the other as "Tom."

Mahlon Coller, an agent of the Federal Bureau of Investigation, talked with the appellant on July 10th, subsequent to the robbery. He came to the FBI Office, upon request, but was not then put under arrest. He told the agents that he would be willing to have the bank witnesses look at him and that he would appear in a show-up. When the agents were through questioning him, he left of his own accord and went home. In the same period, the officers had been looking for a man by the name of Mahlon Fehl, in connection with the case.

On August 25, 1954, nearly two months after the robbery, the appellant appeared in a line-up at the Detroit Police Department. He was brought in with four others, all dressed in dark clothes, their faces hidden, an arm of each pointing as though it carried a gun, and each was asked to repeat the words that had been used at the time of the holdup. Mrs. Morrison and Mrs. Barker each, coming in singly without opportunity to confer, identified the appellant solely by his voice, ⁕ ⁕ ⁕ "it was reassuring," "a pleasant voice." Mrs. Morrison, testifying, said: "I knew the moment I saw, it was the same man that was in front of me that day the bank was robbed ⁕ ⁕ ⁕ because it looked exactly like the man. The whole appearance of the man looked exactly like the man that was in front of me that day." Mrs. Barker testified: "When I went to the showing I was a little doubtful as to how I was going to be able to identify a man whom I had only seen masked, but when I went to the show-up I saw Mr. Reamer with a hat on, with his face covered, and his hand in that position, I knew definitely that that was the same gentleman who had held me up."

There was no other clearly identifying testimony. A Mrs. Jones saw two un-

masked men leaving the bank while looking through her window. She said there was a similarity but she would not say positively that the appellant was one of them. This was the only evidence that undertook to place the appellant at the bank at the time of the robbery.

Here, then, is the situation, as we view it from the record. Two women in a critical position saw an armed man facing them for a few seconds, did not see his face, could not tell the color of his eyes, and heard a voice they had never heard before. They were asked, two months later, to see if they could identify the appellant in a police lineup. The scene prepared by the authorities was as close to that at the bank at the time of the robbery as it was possible to make it, * * * clothes of identical color, hat pulled down, a hand extended as though holding a gun, and a repetition of the precise words spoken at the bank. No feature was identified, or identifiable, except the voice. That was testified to as being "reassuring"; but so were the words themselves reassuring,—"as long as they did as they were told they would not be harmed." It was the application of the power of suggestion upon both witnesses. It is reminiscent of the illusion relied upon on stage or screen, where an off stage voice is in timed relation to lip movements and mannerisms of one on the stage, suggestively garbed. The evidence of the tellers was admissible, and we express no view as to the propriety of the technique employed. However, the identification is uncorroborated by any other circumstance and is so pregnant with danger of honest mistake that it fails to qualify as dependable substantial proof that the appellant was one of the bank robbers. Neither logic nor experience persuades us to so hold. We assume that the investigation by the FBI agents was thorough and their interrogation of the appellant searching when they interviewed him, a month after the robbery. They did not, however, arrest him but permitted him to go home. If any clues were later discovered, the record does not disclose them. The appellant came to his interrogation willingly and voiced no objection to being confronted by the bank witnesses. This is not only conceded but affirmatively proclaimed.

The Government has cited no persuasive case where a conviction was affirmed upon identification of voice alone and we have found none, after diligent search. In Martin v. State, 1930, 100 Fla. 16, 129 So. 112, the Florida Supreme Court affirmed a conviction where the accused was in the presence of the witness unmasked for five minutes and identified by his general appearance, his peculiar nose and his voice. In Pennington v. State, 91 Fla. 446, 107 So. 331, the accused was identified in the dark by witnesses who had known him for a number of years and had hidden a gun used by a co-defendant. A similar case is Taylor v. State, 31 Ala.App. 590, 20 So.2d 239, Court of Appeals of Alabama, and somewhat similar was the identification in Brown v. Commonwealth, 310 Ky. 306, 220 S.W.2d 870, 871, in the Kentucky Court of Appeals. In State v. Bell, 300 S.W. 504, the Supreme Court of Missouri affirmed conviction of a masked bandit who robbed his work foreman on the street who had reported the robbery to police because he thought the man was the defendant. In Auerbach v. United States, 6 Cir., 136 F.2d 882, this court affirmed a conviction for concealing distilled spirits upon the testimony of a witness who had known the defendant about two years and liquor withdrawn from inventory was found in defendant's basement. In People v. Sullivan, 290 Mich. 414, 287 N.W. 567, masked bandits who had robbed a theater were partially identified by voice. One witness had seen him outside the theater unmasked and had been able to recognize him and another inside the theater had observed the defendant's features when his handkerchief momentarily slipped. In Commonwealth v. Bolish, 138 Pa. Super. 598, 10 A.2d 785, the Superior Court of Pennsylvania sustained an identification depending upon one witness but he had expressed doubt as to posi-

tiveness of the identification in a first trial of the case. At the second trial, he was more positive and explained that his answer at the first trial was due to threats he had received concerning his testimony but the accused had been unmasked and his voice was neither the sole nor main support of the identification. In a somewhat similar case, Henderson v. State, 209 Ga. 238, 71 S.E.2d 628, a conviction, depending upon voice alone, was reversed, the court observing that a different result would have been reached if the witness had been familiar with the defendant's voice at the time of the crime. Commonwealth v. Bolish, supra, is the only case that has been found that, even remotely, approaches identification by voice alone, as is here relied upon.

Reversed.