415 A.2d 1241

**COMMONWEALTH of Pennsylvania,**

v.

**Thomas Anthony GRILLASCO, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Filed Dec. 14, 1979.

Jack H. Land, Philadelphia, for appellant.

Eric J. Cox, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH and LIPEZ, JJ.

CERCONE, President Judge:

Appellant takes this appeal from his conviction on September 21, 1976 for the crime of theft by deception.[1] Appellant argues, *inter alia*, that the evidence presented at trial was insufficient to support his conviction. We agree with appellant and, for the reasons set forth below, we reverse.

Briefly stated, the relevant facts of the instant case are as follows. Jack Ott, a salesman for M. & E. Marine Supply Company in Collingswood, New Jersey, received a phone call at his office on January 22, 1975 from a man identifying himself as Tony. Tony offered to sell Ott a number of

---

1. 18 Pa.C.S. § 3922 (1973).

"surplus" televisions. Although Ott initially declined the offer, Ott later changed his mind when the majority of the thirty-five employees of Marine Supply told Ott that they were interested in purchasing some of the sets. After Ott took the orders from company employees for the sets and collected from them the cash payments which were required, arrangements were made for Ott to pick up the sets by meeting a man named Bill on January 27, 1975 at 7:00 p. m. in the parking lot of the Howard Johnson Restaurant in King of Prussia, Pennsylvania. Accompanied by his friends, Charles Krowicki and Ellis Prentz, Ott showed up at the designated time and place, where a man, who identified himself as Bill, approached the trio. Bill said that Ott was to accompany him to pick up the sets at the warehouse, but that it was unnecessary for either Krowicki or Prentz to come along because there were enough workers scheduled to load the truck. Thereupon, Bill and Ott drove in Ott's truck to the King of Prussia Plaza in Montgomery County. When they arrived at the Plaza, Bill said that all the loading docks at the warehouse were filled so they would have to park in the lot and wait. After Ott parked the truck, Bill asked Ott if he had the money with him. Ott replied affirmatively and turned the envelope containing $5,850.00 in cash over to Bill, who in turn gave Ott a receipt. Bill said that he wanted to take the money to the office and that he would return in a few minutes. Bill left with the $5,850.00, but never returned. No television sets were delivered nor was any of the money recovered.

Ott, Krowicki and Prentz waited more than a week before reporting the incident to the police. (Ott candidly admitted that their initial reluctance to go to the police was due to their fear that they themselves may have committed a crime). On February 11, 1975, Ott and his friends went to the Upper Merion Township Police in Montgomery County, Pennsylvania and reported the incident. That same day, they were each separately shown a portfolio of approximately thirty photographs and each selected the photograph of appellant as portraying the man called "Bill." Ott and his

friends then jointly reviewed the portfolio and together they reiterated their identification.

Appellant was not arrested until one year later, on February 19, 1976, and trial commenced on September 21, 1976. At trial, Ott, Krowicki, and Prentz, testified for the Commonwealth. None positively identified appellant as the man who took the money. Instead, each one hesitated, saying that although appellant generally resembled the man named "Bill," they were not sure that appellant was that man since Bill had black hair, not grey like appellant's, and because Bill did not have a mustache, and appellant did. Ott, when asked by defense counsel if he was certain that appellant was the culprit, replied, "At this point I will not say, yes, but neither will I say no. We're talking [about something that happened] two years ago." Ott later said, "Today I could not be sure that this is the man."

Similarly, when Prentz testified, he indicated the same uncertainty, as is evidenced in this excerpt from cross-examination.

> Defense Counsel: "Any why today can't you make a positive identification?
>
> Prentz: The gentlemen [Bill] had black hair, had no mustache. I'd be completely out of line to say, yes, point a finger and say yes, that's definitely the man. There's certain changes that have occurred.
>
> Defense Counsel: So the changes are the greying of his hair and the mustache.
>
> Prentz: Yes.
>
> Defense Counsel: How about the rest of his features?
>
> Prentz: Approximately what I identified in the picture.
>
> Defense Counsel: But you are not sure.
>
> Prentz: No."

Defense counsel also conducted an extensive cross-examination of Krowicki on this point, which in part, reads as follows:

> Defense Counsel: "Does the man in that picture look like this man?

Krowicki: A little, yes.

Defense Counsel: A little.

Krowicki: Yes.

Defense Counsel: But if you had to make the identification today, would you say that the person in that picture is the man sitting here today?

Krowicki: I would not."

Other than the identification testimony of these three witnesses, the Commonwealth introduced no other evidence linking appellant with the crime.

Appellant argues that pre-trial photographic identification evidence is insufficient, standing alone, to prove beyond a reasonable doubt that he committed the crime charged, particularly in view of the tenuous and uncertain identification made during trial. This precise issue has been already decided by this court in *Commonwealth v. Farrington*, 219 Pa.Super. 104, 280 A.2d 623 (1971). In *Farrington*, the facts surrounding the identification were virtually identical to those in the instant case. Of such an identification, we said,

"Here the victim's in-court identification of appellant was vague, tenuous, and uncertain. His reliance upon the identification of photographs made two years prior to trial does not meet the standards necessary to convict beyond a reasonable doubt. Since the Commonwealth relied solely upon identification testimony and there was no other probative evidence connecting appellants with the crime, the Commonwealth has failed to establish their guilt beyond a reasonable doubt."

*Id.*, 219 Pa.Super. at 106–107, 280 A.2d at 625.

*Farrington* is on all fours with the instant case. Therefore, on the strength of the *Farrington* decision, we hold that the Commonwealth has not proved its case against appellant beyond a reasonable doubt, as it must do. Accordingly, we reverse.

Reversed.