ROBERT BEDFORD, JR. *v.* STATE OF MARYLAND

[No. 75, September Term, 1981.]

*Decided March 24, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

■■■■■■■■■■

*John L. Kopolow, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. ELDRIDGE, COLE and DAVIDSON, JJ., dissent. ELDRIDGE, J., filed a dissenting opinion at page 185 *infra,* in which COLE and DAVIDSON, JJ., concur.

At issue in this case is whether the extrajudicial identification of an individual's photograph by two victims as that of the culprit who robbed them will support a rational inference of the criminal agency of the accused, notwithstanding the fact that neither of them was able to identify him in court. We hold that it does. Thus, we shall affirm the judgment of the Court of Special Appeals contained in an unreported opinion. We shall decline the request of the petitioner, Robert Bedford, Jr., that we adopt the standard laid down in *People v. Gould,* 54 Cal. 2d 621, 354 P.2d 865, 7 Cal. Rptr. 273 (1960), heretofore rejected by the Court of Special Appeals in *Cousins v. State,* 18 Md. App. 552, 556-59, 308 A.2d 692, *cert. denied,* 270 Md. 738 (1973).

The facts here may be briefly stated. Petitioner was convicted by a Baltimore County jury on a number of charges, including two of robbery with a dangerous and deadly weapon and one of daytime housebreaking. The Court of Special Appeals affirmed. We granted the writ of certiorari in order that we might review the identification problem.

The incident in question took place shortly after noon on September 24, 1979. The victims, George and Grace Heinmuller, aged eighty and seventy-seven, respectively, returned home from shopping. They were confronted by an individual in their dining room "with his right arm raised and a hatchet in his hand." He struck, robbed, bound and gagged them, leaving them in a bedroom in their home while he ransacked the house. The culprit appears to have been in

the home an hour or longer and within the view of the victims for about half an hour. He wiped off fingerprints prior to his departure from the house.

The victims provided a description of the accused. That evening they were met by detectives of the Baltimore County Police Department at the home of a neighbor who had insisted "that the[ir] house was in no condition to stay in, and [they] were in no condition to stay there with the door all torn off and that sort of thing . . . ." They assisted a detective in preparing a composite picture of the assailant. Subsequent to this, each victim, independently of the other, viewed six photographs. Each, independently of the other and out of the presence of the other, selected a photograph of Bedford and indicated that he was the individual who had robbed them.

Since the victims were unable to identify the accused at a hearing on a motion to suppress identification evidence, they were not asked to attempt an identification in the presence of the jury at trial in February 1980. However, evidence as to their pretrial identification of the accused was presented.

As is so often the case, Bedford presented an alibi defense. It is claimed that under the decision in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the conviction here cannot stand. Reliance is particularly placed upon *People v. Gould, supra,* where the California Supreme Court held that an extrajudicial identification that cannot be confirmed by identification at trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime.

First, we point out that *Jackson* and its holding that an accused "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt," 443 U.S. at 324, in no way changed the standard in effect in Maryland. In *Williams and McClelland v. State,* 5 Md. App. 450, 247 A.2d 731 (1968), *cert. denied,* 252 Md. 731, 734 (1969), Judge Orth carefully reviewed for the Court

of Special Appeals a number of the prior cases of this Court such as *Gibson v. State,* 238 Md. 414, 209 A.2d 242 (1965); *Shelton v. State,* 198 Md. 405, 84 A.2d 76 (1951); *Edwards v. State,* 198 Md. 132, 81 A.2d 631, 83 A.2d 578 (1951); and *Lambert v. State,* 196 Md. 57, 75 A.2d 327 (1950). All of those cases arose subsequent to the constitutional amendment now embodied in Maryland Declaration of Rights, Art. 23 which provides that a trial court "may pass upon the sufficiency of the evidence to sustain a conviction," and, hence, that this was open to appellate review. Judge Orth then said for the Court of Special Appeals:

> "Once the question of the sufficiency of the evidence is properly before us, we believe that the criteria used to determine the question is the same, be the verdict rendered by the court or a jury. Whether the test applicable to jury cases is stated in the affirmative — the judgment will be affirmed if there is any relevant evidence before the jury to sustain a conviction — or in the negative — to overturn a judgment there must be no legally sufficient evidence on which the defendant could be found guilty beyond a reasonable doubt — it is inherent that to be sufficient in law to justify the conviction within the intent of [Code (1957, 1967 Repl. Vol., 1967 Cum. Supp.)] Art. 27, § 593 the admissible evidence adduced must show directly or *support a rational inference of the facts to be proved,* from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." 5 Md. App. at 458-59 (emphasis added).

Applying this standard under *Jackson,* 443 U.S. 307, Chief Judge Murphy said for the Court in *State v. Rusk,* 289 Md. 230, 240, 424 A.2d 720 (1981), "The applicable standard is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S. at 319 (emphasis in original)."

*Accord, Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980).[1]

As pointed out by Justice Hennessey for the Supreme Judicial Court of Massachusetts in *Commonwealth v. Swenson,* 368 Mass. 268, 272, 331 N.E.2d 893 (1975), an extrajudicial identification made by a witness may be offered in evidence for three possible purposes: (1) for corroboration; (2) for impeachment; or (3) as substantive evidence of an identification, having probative value. In *Johnson v. State,* 237 Md. 283, 206 A.2d 138 (1965), this Court was presented with the issue of whether testimony concerning an extrajudicial identification might be received as substantive evidence. There identification was made at a lineup. Judge Horney said for the Court:

> "We hold therefore that where, as here, the iden-
> tifying victims or eyewitnesses were present and
> subject to cross-examination, the testimony of the

[1.] For the benefit of the generation of attorneys who have been admitted to the bar in the last thirty years, we point out that because of the provisions of what was then Md. Const. art. 15, § 5, providing, "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact," courts did not pass upon the sufficiency of the evidence nor did this Court pass upon such sufficiency on appeal until the Constitution was amended in 1950 with the addition of the words "except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." This provision has since been moved into Declaration of Rights, Art. 23.

Also for the benefit of that generation of lawyers, we observe that in many of the counties of the State until very recently judges did not instruct the jury. It was customary for counsel to read to the jury from various textbooks. The book upon which many Maryland attorneys relied was L. Hochheimer, *Criminal Law* (2d ed. 1904). Many such attorneys quoted § 157 of that work to juries:

"The burden rests upon the government of establishing by proof beyond a reasonable doubt every fact material to the guilt of the defendant, including every circumstance that enters into the grade or degree of the crime charged, and nothing is to be presumed or taken by implication against him. The law presumes every man innocent of crime. This presumption starts with the accusation and continues until the rendition of the verdict. Artificial presumptions and estoppels have no place in establishing guilt. Proof beyond a reasonable doubt means such proof as produces an abiding conviction, to a moral certainty, of the truth of the charge, and, unless the jury are thus convinced, they must acquit." *Id.* at 175.

We regard that as being basically in accord with that enunciated by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

police officer as to the extrajudicial identifications was admissible.

"Even where witnesses do not make a courtroom *identification of the indictees, an extrajudicial iden-*tification is admissible as evidence over an objection that it is not the best evidence. *State v. Simmons,* 385 P.2d 389 (Wash. 1963). We note that the *Simmons* case cited *Judy v. State,* [218 Md. 168, 146 A.2d 29 (1958)], for the proposition that the first identification is usually the best identification. For other cases that have admitted evidence of extrajudicial identifications even where no positive courtroom identification was made, see *People v. Gould,* 354 P.2d 865 (Cal. 1960) and *State v. Wilson,* 231 P.2d 288 (Wash. 1951), *cert. den.* 342 U.S. 855 (1951) and 343 U.S. 950 (1952)." 237 Md. at 291.

Whether one speaks in terms of a lineup or a photographic identification, the principle is the same.

The rationale for admitting evidence of an extrajudicial identification as substantive evidence of identity was articulated by Justice Traynor for the Supreme Court of California in *Gould,* the case upon which the petitioner places major reliance. Gould's contention there was that the victim "did not identify him at the trial and that evidence of an extrajudicial identification is admissible only to corroborate an identification made at the trial by the same witness." There was evidence that the complaining witness was shown a number of pictures a short time after the incident and that she selected a photograph of Gould as being that of one of the culprits involved. Justice Traynor said for the Supreme Court of California in rejecting Gould's contention:

"Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial (*People v. Slobodion,* 31 Cal.2d 555, 560 [191 P.2d 1]), but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements

unless it is first impeached (*People v. Hardenbrook,* 48 Cal.2d 345, 351 [309 P.2d 424]; *People v. Kynette,* 15 Cal.2d 731, 753-754 [104 P.2d 794]), evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. (*People v. Slobodion,* 31 Cal.2d 555, 559-560 [191 P.2d 1]; *United States v. Forzano,* 190 F.2d 687, 689; see *People v. Hood,* 140 Cal.App.2d 585, 588 [295 P.2d 525]; *People v. Bennett,* 119 Cal.App.2d 224, 226 [259 P.2d 476]; 4 Wigmore, Evidence (3d ed. 1940), § 1130, p. 208.) The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. (See *Judy v. State,* 218 Md. 168, 174-175 [146 A.2d 29, 32-33]; McCormick, Evidence, § 39, p. 74; Morgan, *Hearsay Dangers,* 62 Harv.L.Rev. 177, 192-193; 3 Wigmore, Evidence (3d ed. 1940), § 1018, pp. 687-688. See also *State v. Wilson,* 38 Wn.2d 593, 617-618 [231 P.2d 288, 300-301]; *People v. Spinello,* 303 N.Y. 193, 201-202 [101 N.E.2d 457, 460-461].)" 54 Cal.2d at 626-27.

The Supreme Judicial Court of Massachusetts also explained in *Commonwealth v. Torres,* 367 Mass. 737, 327 N.E.2d 871 (1975):

"A pre-trial identification is regarded as having equal or greater testimonial value than one made in court because the circumstances of the earlier iden-

tification often were less suggestive and because that identification occurred closer to the time of the offense.

"Even if the witness does not identify the defendant in his or her testimony at trial, any pre-trial identification of the defendant by that witness in constitutionally proper circumstances should be given probative value. See *Clemons v. United States,* 408 F. 2d 1230, 1242-1243 (D. C. Cir. 1968), cert. den. 394 U. S. 964 (1969); Wigmore, Evidence (Chadbourn rev.) § 1130 (1972). Although the probative value of any evidence of such identification is for the jury, that evidence, if believed, tends to prove that the defendant was the perpetrator of the crime. The trend of decisions is to permit such evidence to be introduced. See *Gilbert v. California,* 388 U. S. 263, 272, n. 3 (1967). We join in that view and do not understand the defendant to argue otherwise." 367 Mass. at 739.

Later, in *Swenson,* 368 Mass. at 272 n.3, Justice Hennessey referred for the court to *Torres* and its statement that the trend of the decisions is to permit evidence of an extrajudicial identification to be introduced with independent probative value. He then said for the court, "That result seems reasonable, particularly where the witness, because of the time lapse before trial, is unable to make an in-court identification but clearly recollects having positively identified the defendant earlier." 368 Mass. at 272 n.3.

In this case, the victims were present at trial and testified. The petitioner concedes that under our holding in *Johnson,* the testimony concerning each victim's selection of the petitioner's photograph as that of the culprit "constitutes admissible evidence of his criminal agency."

*Gould* is the only decision of a court of last resort which either the parties or the Court have been able to locate holding that an extrajudicial photographic identification is insufficient evidence of criminal agency to warrant conviction. Two individuals were involved in that case. We have

earlier alluded to the California court's rejection of Gould's contentions. In his case an officer testified that upon Gould's arrest, he first denied knowledge of any burglary at the location in question. After being told, however, that an eyewitness had identified him, Gould said, "I know what you are talking about." Marudas, the other defendant involved there, denied any knowledge of the burglary. He claimed that the evidence tending to identify him as the other culprit was insufficient to sustain his conviction. The court there said:

"An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. (See *Reamer v. United States,* 229 F.2d 884, 886.) Moreover, the probative value of an identification depends on the circumstances under which it was made. Mrs. Fenwick merely selected one of a small group of photographs. The small size of the group increased the danger of suggestion. (See 3 Wigmore, Evidence (3d ed. 1940), § 786*a,* p. 164.) Identification from a still photograph is substantially less reliable than identification of an individual seen in person. (See, *id.,* pp. 165-166.) It becomes particularly suspect when, as in the present case, the witness subsequently fails to identify the subject of the photograph when seen in person and there is no other evidence tending to identify him." 54 Cal. 2d at 631.[2]

---

**2.** *Gould* is a puzzling case. In *Cousins v. State,* 18 Md. App. 552, 557 n.1, 308 A.2d 692, *cert. denied,* 270 Md. 738 (1973), Judge Thompson noted for the Court of Special Appeals the problem relative to language. The opinion as printed in 54 Cal. 2d 621, 631 refers to such identification that cannot be confirmed by an identification at the trial as being "*insufficient* to sustain a conviction in the absence of other evidence . . . ." (Emphasis added.) As printed in 354 P.2d 865, 870 and 7 Cal. Rptr. 273, 278 the word used is "sufficient." However, the relevant headnote in the latter two publications states that such an identification "that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence . . ." etc. This is consistent with the headnote in the official California report. It is assumed, therefore, that "insufficient" was meant. This goes to confirm the oft made statement by one individual

The Superior Court of Pennsylvania has adopted the *Gould* view, however, without citation of it. See *Commonwealth v. Grillasco,* 272 Pa. Super. Ct. 365, 415 A.2d 1241 (1979), and *Commonwealth v. Farrington,* 219 Pa. Super. Ct. 104, 280 A.2d 623 (1971). *Cf. Commonwealth v. Boone,* 429 A.2d 689, 691 (Pa. Super. Ct. 1981). We neither have found nor have been referred to a decision of any other intermediate appellate court adopting the *Gould* rule.

As previously noted, in *Cousins,* 18 Md. App. at 556-59, the court declined to adopt the *Gould* rule. Judge Thompson noted for the court "that the authority relied on by the [California] court, *Reamer v. United States,* [229 F.2d 884 (6th Cir. 1956)], was a case where a masked bandit was identified only by his voice, not by his appearance." The Court of Special Appeals in *Cousins* correctly stated that which took place in *Reamer.* The court in *Reamer* summarized the situation:

> "Two women in a critical position saw an armed man facing them for a few seconds, did not see his face, could not tell the color of his eyes, and heard a voice they had never heard before. They were asked, two months later, to see if they could identify the appellant in a police lineup. . . . No feature was identified, or identifiable, except the voice. That was testified to as being 'reassuring'; but so were the words themselves reassuring, — 'as long as they did as they were told they would not be harmed.' It was the application of the power of suggestion upon both witnesses." 229 F.2d at 886.

*Commonwealth v. Fitzgerald,* 376 Mass. 402, 381 N.E.2d 123 (1978), and *Commonwealth v. Vitello,* 376 Mass. 426, 381 N.E.2d 582 (1978), each support the State's position

---

with more than sixty years' experience in printing that in such process "anything can happen," and the corollary observation by another individual also familiar with the process who added "and often does."

The opinion in *Gould* is puzzling otherwise, however, because it seems to be internally inconsistent. The views set forth relative to Gould in the first part of the opinion seem inconsistent with those stated concerning the appeal of Marudas in the latter part of the opinion.

here. In *Fitzgerald* the court was directly faced with the issue of sufficiency of the evidence. On the morning of the incident in question, the victim identified photographs of the two accused individuals. The court said:

> "The defendants suggest that the fact the witness Doris denied in court that the defendants were present at the apartment rendered the earlier identifications so unreliable that its admission as substantive evidence would deny the defendants due process of law. However, there is no claim before us that the photographic identifications were made under suggestive conditions, and, as discussed *supra,* the defendants had an opportunity to cross-examine and did thoroughly cross-examine Doris concerning the accuracy of these identifications. Where, as here, the identifications were not made under suggestive conditions and thus their admission was not precluded and where the defendants were given and, in fact, took advantage of, ample opportunity to expose to the jury any factors tending to discredit the identifications, we cannot conclude that they were so unreliable that they should not have been admitted as substantive evidence. See *Commonwealth v. Torres, supra;* 4 J. Weinstein & M. Berger, Evidence par. 801 (d) (1) (C) [01] (1977). Rather, the assessment of the reliability of the identifications in these circumstances was for the jury. See *Commonwealth v. Torres, supra; Lamoureux v. Commonwealth,* 362 Mass. 880 (1972); *Commonwealth v. Geraway,* 355 Mass. 433, 438-440, cert. denied, 396 U.S. 911 (1969)." 376 Mass. at 409-10.

A similar issue was before the Massachusetts court a short time later in *Vitello.* The bulk of the opinion there was concerned with a determination that the trial judge erred in allowing testimony regarding a polygraph examination unfavorable to the defendant to be introduced during the Commonwealth's case in chief. Because the case was

remanded for a new trial, the court expressed its views upon the contention of Vitello that the trial judge erred in denying his motion for a directed verdict. There the victim had examined a large number of photographs, "perhaps over 200," a day or two after the robbery, but was unable to make an identification. About ten days after the incident, he was shown a group of about fifteen photographs from which he selected one as being that of the robber. He was "positive" of the accuracy of the identification. The opinion states:

> "At the trial, Johnson was shown the same group of photographs and he identified the same photograph as being that of the robber. He testified that he was certain of the photographic identification and reiterated that he 'wasn't going to forget [the robber's] face.' When Johnson was asked, however, if he could identify anyone in the court room as the robber, he said that he could not. When the defendant was pointed out to him, Johnson said that he was positive that the defendant was not the robber. A police officer subsequently testified that the man in the photograph chosen by Johnson was the defendant." 376 Mass. at 458.

The court referred to *Swenson, Fitzgerald* and *Torres*. It then stated:

> "Assigning independent probative value to extrajudicial identification in such a situation is reasonable, we have noted, 'particularly where the witness, because of the time lapse before trial, is unable to make an in-court identification but clearly recollects having positively identified the defendant earlier.' *Commonwealth v. Swenson, supra* at 272 n.3.
>
> "The present case presents a closely analogous situation. The witness, Johnson, made a positive identification of the photograph soon after the robbery when the robber's image was fresh in his mind. This mental image had faded by the time of trial to the point that Johnson testified he no longer

> remembered the robber but only remembered the picture. He testified that he had been positive of the extrajudicial identification, and he made a positive in-court identification of the same photograph. This testimony was properly admitted as independent evidence to be weighed, together with Johnson's in-court denial that the defendant was the robber, by the jury. Cf. *Commonwealth v. Fitzgerald, supra.*" 376 Mass. at 459.

The court then considered "the question whether this evidence alone would be sufficient to withstand a motion for directed verdict." It said:

> "Although there is authority to the contrary, see *People v. Gould,* 54 Cal. 2d 621, 631 (1960), we think that an extrajudicial identification may in an appropriate case provide a jury with a sufficient basis upon which to find a defendant guilty beyond a reasonable doubt. This conclusion is consistent with our observation that identifications made soon after the event are generally more reliable than identifications made at a much later date. *Commonwealth v. Swenson, supra* at 272 n.3. The instant case presents a good illustration of this proposition. See *Cousins v. State,* 18 Md. App. 552, 557 (1973). Cf. *Commonwealth v. Fitzgerald, supra* at 410 n.5." *Id.* at 461.

The California court in *Gould* recognized that an extrajudicial identification made but a short time after the incident "has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind," adding, "The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value . . . ." 54 Cal. 2d at 626. Given that sensible statement and the fact that the decision relative to sufficiency of the evidence in *Gould* rested upon an unsound foundation, we believe the better view to be that of the Supreme Judicial Court of

Massachusetts as set forth in *Fitzgerald* and *Vitello*. We regard the opinion in *Gould* as not soundly premised because the facts in that portion of it concerned with sufficiency of the evidence differ so materially from those in the case upon which the decision is based. There is no claim here of any impropriety in the photographic identification. The jury had an opportunity to observe the demeanor of the witnesses. It was for the jury to determine the weight to be given the evidence. We hold that an extrajudicial photographic identification of an accused is sufficient evidence of his criminal agency to support a conviction, notwithstanding the fact that the victim may be unable to identify him at the time of trial. We are of the view that a rational trier of fact could conclude from such evidence that the person identified is the culprit.

*Judgment affirmed; appellant to pay the costs.*

*Eldridge, J. dissenting:*

In my view, when an extrajudicial identification of a photograph, which cannot be confirmed by a subsequent personal identification and which is not otherwise corroborated, is the only evidence linking an accused with the commission of the crime charged, then the evidence is insufficient for a conviction under the constitutional standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Here, the defendant was convicted of robbery with a dangerous weapon and daytime housebreaking. The only evidence introduced at trial which tended to link the accused with the commission of the crimes was the testimony of a police officer that the victims (husband, aged 80, and wife, aged 77) had, several hours after the crimes were committed, each identified, from a sampling of six, a photograph of the accused as a picture of the perpetrator.

The victims, however, were unable *ever* to identify in person the accused as the perpetrator, even though they had an

opportunity to do so less than five months later at a hearing on a motion to suppress, which was held on the same day as the trial. It should be noted also that the victims failed to identify the accused in person despite the fact that they had observed the perpetrator, in bright daylight, for half an hour. Furthermore, as previously stated, there was no other evidence of any persuasive merit introduced which would have linked the defendant to the crimes. Finally, there was evidence introduced to show that defendant was at a different location at the time of the commission of the crimes; defendant's father testified that his son had been at home.

As the majority opinion correctly indicates, the standard of proof which must be met in order to sustain a conviction was set forth in *Jackson v. Virginia, supra,* 443 U.S. at 319, and applied by us in *State v. Rusk,* 289 Md. 230, 240, 424 A.2d 720 (1981):

> "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

This standard is a corollary to the mandate of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that due process prohibits a criminal conviction in all cases "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

I do not believe that a conviction can stand when the sole evidence presented is testimony by a third party as to an extrajudicial identification of a photograph when that identification cannot be confirmed in person, and when *no* other evidence is offered which in any way independently corroborates the State's contention that the accused is indeed the perpetrator.[1] A rational trier of fact could not, on

---

1. There was no controversy as to whether the crimes had been committed; this had apparently been conceded. The only issue was whether the accused was the perpetrator. It was in reference to this single issue at trial that the State offered its solitary "proof" — the extrajudicial photographic identification.

the basis of that one item of evidence, find beyond a reasonable doubt that it was the defendant who committed the crime.[2] Thus, the conviction should be reversed on the standards set forth in *Jackson v. Virginia, supra,* and *In re Winship, supra.*

The principle which should govern this type of case was succinctly set forth by Justice Traynor, writing for the Court in *People v. Gould,* 54 Cal.2d 621, 631, 354 P.2d 865 (1960):

> "An extra-judicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime."

The majority declines to follow the *Gould* principle and discusses approvingly *Commonwealth v. Vitello,* 376 Mass. 426, 381 N.E.2d 582 (1978), which also rejected the *Gould* rule. However, the majority overlooks the fact that *Vitello* was decided before *Jackson v. Virginia,* and, at a time when the applicable due process requirement was only that a defendant could not be convicted when there was *no* evidence against him. *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). And, in the words of Chief Justice Warren, even "a mere modicum of evidence may satisfy a 'no evidence' standard." *Jacobellis v. Ohio,* 378 U.S. 184, 202, 84 S.Ct. 1676, 1686, 12 L.Ed.2d 793 (1964), quoted in *Jackson v. Virginia, supra,* 443 U.S. at 320.

An extrajudicial photographic identification, when the witness is unable to make a personal identification, is, at best, marginally probative. But such evidence is no more than that "modicum" necessary to satisfy the "no evidence" standard of *Thompson v. Louisville, supra.* Thus, the Massachusetts Court had no need to discuss Supreme Court cases since the due process standard applicable at the time was met. Under *Thompson v. Louisville* there was no

---

**2.** The majority first discusses whether the evidence in question was even admissible and concludes that it was. I agree with the majority on this point.

constitutional problem with basing a conviction on a mere scintilla of evidence.

Of course, *Jackson v. Virginia* has raised the standard of *Thompson v. Louisville*. Under the due process clause, a mere modicum of evidence is not a sufficient basis for conviction. Rather the evidence presented must be probative enough to remove any reasonable doubt which a reasonable finder of fact might have. This was not the standard applicable at the time of the *Vitello* decision, and, therefore, I believe that the majority places entirely too much emphasis on that case.

In sum, when the *only* evidence introduced to connect a defendant with a crime is testimony of a third party that the victims made an extrajudicial identification of a photograph of the accused, and claimed that it looked like the perpetrator, then there is necessarily a reasonable doubt whether the accused committed the crime, and his conviction should not be permitted to stand.

Judges Cole and Davidson have authorized me to state that they concur with the views expressed herein.