## CLOVIS E. JONES *v.* STATE OF MARYLAND

[No. 327, September Term, 1972.]

*Decided February 26, 1973.*

The cause was submitted on briefs to ORTH, C. J., and MOYLAN, J., and EDWARD O. THOMAS, Associate Judge of the District Court of Maryland for District 2 and BRUCE C. WILLIAMS, Associate Judge of the District Court of Maryland for District 7, specially assigned.

Submitted by *John J. Garrity* for appellant.

Submitted by *Francis B. Burch, Attorney General, Arrie W. Davis, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard P. Arnold, Assistant State's Attorney for Prince George's County,* for appellee.

THOMAS, J., delivered the opinion of the Court.

The appellant, Clovis E. Jones, was tried and convicted by Judge Robert B. Mathias, sitting with a jury, in the Circuit Court for Prince George's County, on April 6, 1972, on a charge of committing robbery with a deadly weapon and was sentenced to a term of twenty years imprisonment.

The questions presented on appeal are:

1. Was there sufficient identification evidence to sustain appellant's conviction?

2. Did the lower court err in not admonishing the jury that the gun was not formally admitted into evidence?

3. Was a reasonable doubt created as to the appellant's guilt by the alibi testimony?

4. Did the lower court properly instruct the jury?

This opinion concerns the first question.

On December 12, 1970, Douglas R. Wills was closing the 7-11 Store of which he was manager at approximately 10:58 P.M. when a man entered and demanded "all your money". Mr. Wills handed over the cash drawer containing about $200.00 and food stamps and was shot in the hand. Another employee was shot in the leg.

At the trial, Mr. Wills was asked on direct examination, "Are you able to point out the person who is sitting in this courtroom who walked up to you with a gun and who shot you?" His reply was, "No." Subsequently, in the same examination, the State's Attorney asked, "Can you say whether or not the man who came into the store and approached you with a gun and told you it was a robbery, can you say definitely whether or not that man is in the courtroom today?", to which Wills responded, "I can't say it definitely."

During his cross-examination, Wills testified that on January 8, 1971, he picked out a photograph of the appellant from among photographs of others and said, "This looks like the guy that shot me." He further testified that he wrote on the back of the photograph, "Positive this is the man that shot me, 1-8-71, 5:00 p.m.", and that he signed the statement. In explanation, he testified that on January 8th, he felt the appellant was the person who shot him, but after fifteen months, he could not make a positive identification.

Detective Raymond E. Daniels testified as a State's witness that Wills identified the appellant's photograph from a group of six pictures. On cross-examination by defendant's counsel, Detective Daniels was asked to whom he talked at the scene of the crime, and he

answered, "Mr. Ryan and Mr. Hill personally". On the basis of this question on cross-examination, the State's Attorney argued that he was now ". . . entitled at this time to find out what the conversation was, and specifically in regard to the photographic identification we would, with the Court's consent, proceed on these lines." Over objection, the State's Attorney elicited from Detective Daniels that Mr. Hill and Mr. Ryan, who were in the store at the time of the robbery, picked out the appellant's photograph and signed it. Hill also inscribed the date and wrote a comment on the back of the photograph. Subpoenas were unable to be served on Hill and Ryan, and they were not in Court.

The State established through the testimony of Mr. Wills and Detective Daniels that Wills picked out appellant's photograph shortly after the holdup although he failed to identify appellant in Court positively. Presumably to bolster the identification, the State had the police officer testify as to the actions of Hill and Ryan, two witnesses to the crime, in identifying appellant's photograph. This testimony was admitted upon the theory that the selection of appellant's photograph was a mere physical action rather than something of communicative significance. We believe that the photographic identification was essentially communicative in nature and is, therefore, subject to the strictures of the hearsay rule, when the persons making that identification are not in court.

In *Smith & Samuels v. State,* 6 Md. App. 59, beginning at page 63, we said:

## "THE ADMISSIBILITY OF IDENTIFICATION EVIDENCE

At the time the *Wade-Gilbert-Stovall* trilogy of opinions were decided by the Supreme Court of the United States [1] it was the general rule in this State that a judicial identification of the

---

1. *United States v. Wade,* 388 U. S. 218; *Gilbert v. State of California,* 388 U. S. 263; *Stovall v. Denno,* 388 U. S. 293; each decided 12 June 1967.

accused, made under the impartial eye of the court, was admissible. It was also the general rule that a witness' testimony as to a prior extra-judicial identification 'should be admitted for the purpose of corroborating the witness and bolstering his credibility * * *.' *Judy v. State,* 218 Md. 168, 174. And testimony by a police officer or some third party as to an extra-judicial identification by an eye-witness was admissible when made under circumstances precluding the suspicion of unfairness or un-reliability, *Walters v. State,* 242 Md. 235, 239, *where the out of court declarant was present at the trial and subject to cross-examination, Johnson v. State,* 237 Md. 283. It was admissible whether or not the out-of-court declarant made a positive in-court identification, and thus was admissible not only as corroboration of a judicial identification but as substantive evidence.[2] *Johnson v. State, supra,* 289. See also *Proctor v. State,* 223 Md. 394; *Basoff v. State,* 208 Md. 643; *Wilkins v. State,* 5 Md. App. 8; *Crumb v. State,* 1 Md. App. 98. The weight to be given a judicial or extra-judicial identification was a matter for the trier of fact. *Barnes v. State,* 5 Md. App. 144; *Crosby v. State,* 2 Md. App. 578. An extra-judicial identification is usually made either by a personal confrontation between the witness and the accused or by a viewing of photographs by the witness and the rules above discussed were applicable to both. See *Austin v. State,* 3 Md. App. 231." (footnotes as in original)

Also see *Jones v. State,* 10 Md. App. 420, at 423.

---

2. "There is a split among the States concerning the admissibility of prior extra-judicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 A.L.R.2d 449." *Gilbert v. California, supra,* 272, note 3.

*Dorsey v. State,* 9 Md. App. 80 at 85, states the law succinctly:

> "The rule is that evidence of an identification at a pretrial confrontation or viewing of photographs is admissible as substantive, independent evidence of identification or as corroborative of a judicial identification, not only when received through the testimony of the out of court declarant, but also when received through the testimony of a police officer or some third party observing the extrajudicial identification, when the out of court declarant is present at the trial and subject to cross-examination."

In his article on "Extrajudicial Identification" in 19 Md. Law Review 201 at 219 and 220, Martin A. Dyer comments on the hearsay aspect of extrajudicial identification:

> "For the same reasons for which it has been contended that an exception to the hearsay rule should exist to admit testimony of an extrajudicial identification, where declarant and witness are identical, one might conceivably argue also that an exception should exist to admit such testimony where the witness and declarant are different persons. It would seem that the result to be achieved in either case, supporting an identification made in court which has little testimonial force, is the same. The element of necessity, however, upon which exceptions to the hearsay rule are usually predicated, seems to be lacking. Where the declarant is available as a witness, there is no necessity for having the evidence introduced by some other person, since the same testimony can be elicited from the declarant-witness. Where the declarant is unavailable by reason of incapacitation, death or other acceptable rea-

son, then, within the existing framework of the law of Evidence, adequate necessity might be said to exist for admitting the evidence of the extrajudicial identification through the testimony of a third-person-witness, as an exception to the hearsay rule.[57] In both of these situations, however, there looms a tremendous question as to the reliability of a third-person-witness, the possible inaccuracies of whose testimony cannot be demonstrated by cross-examination. The cross-examiner cannot show that the declarant did not observe accurately, that his powers of perception were inadequate, that his recollection is imperfect, or indeed that he was not telling the truth. Testimony from the relation of a third person to the event, even where the declarant is known, cannot be subjected to such tests. Obviously, such testimony is subject to every conceivable hearsay objection." (footnote as in original)

Certainly the hearsay aspect of identification cannot be avoided by eliminating words of identification but permitting evidence of demonstrative identification. Should such evasion of the hearsay rule be countenanced, the door would be open to testimony as to pointing of fingers, shaking of heads, grimaces of joy or disgust, all suggestive of the game of Charades. To permit the detective to testify that the absent witness picked appellant's photograph from a group of photographs is fully as effective as testimony of an actual spoken identification.

The admission of the hearsay identification in the absence of the identifying witnesses was here not harm-

---

**57.** *Model Code of Evidence* (1942) Rule 503, Admissibility of Evidence of Hearsay Declaration:
"Evidence of a hearsay declaration is admissible if the judge finds that the declarant
"(a) is unavailable as a witness, or
"(b) is present and subject to cross-examination."

less beyond a reasonable doubt. See *Chapman v. State of California*, 386 U. S. 18. In this instance, such identification could have contributed to the conviction. Although Wills made an extrajudicial identification, he was unable to identify positively the defendant in court. The ingredient necessary to convince the jury may well have been the testimony of Detective Daniels as to the out of court identification by the absent witnesses. Therefore, in view of the complete lack of any in-court identification of the appellant by anyone, and considering the nature of Wills's extrajudicial photographic identification, we are not convinced beyond a reasonable doubt that the erroneously admitted extrajudicial identifications of both Ryan and Hill did not contribute to the conviction.

As the case will be reversed on the first issue, there is no need to consider the remaining issues.

> *Judgment reversed; case remanded for a new trial.*