543 A.2d 858

**Lester Lee BULLOCK**

v.

**STATE of Maryland.**

**No. 1480, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 11, 1988.

Certiorari Denied Oct. 11, 1985.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Argued Before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

A jury in the Circuit Court for Wicomico County found the appellant, Lester Lee Bullock, guilty of robbery, for which the Honorable Alfred T. Truitt, Jr. sentenced appellant to seven years in prison.[1] Appellant was also convicted of several lesser included offenses for which sentences were not imposed.

The victim of the robbery, Robert Reinert, Sr., was attacked while he was working in North Lake Park. Mr. Reinert testified that he observed a small red car with Delaware plates stop and two men alight from the vehicle. After he resumed his job, he was tackled from behind and knocked unconscious; when Mr. Reinert regained consciousness, he was laying face down and was being beaten. The

---

1. Judge Truitt at the same time sentenced appellant for two unrelated crimes to which appellant had pleaded guilty.

perpetrator of the robbery took Reinert's pants, key chain, wedding ring and wallet.

Reinert testified that a red jacket, admitted into evidence, looked like the jacket worn by one of the assailants. Two other witnesses saw a red Toyota and observed Mr. Reinert being beaten. By the time they reached Mr. Reinert, however, the assailants had fled. Although the witnesses could not identify the robbers, they did testify that the taller one wore a red plaid jacket similar to that worn by appellant when he was arrested.

Shortly after the attack, a description of the crime was broadcast over the police frequency. Deputy Sheriff Eckhardt testified:

On April 30th at approximately 10:35 I received a broadcast in reference to be on the look-out for a small red vehicle with a black vinyl roof. The vehicle was occupied by three black males. One subject was wearing a blue jacket and one subject was wearing a red and plaid flannel shirt.

That was the broadcast I received. Approximately 15 minutes after the broadcast, while patroling the area, I noticed in the Grant Shopping Center a small Toyota Corolla, red in color, with the black vinyl top, Delaware Registration 49981.

BY MR. RUARK:

Q At this time let me show you what has been introduced as State's Exhibits 2–A, B and C. Do you recognize these, please?

A Yes, that is the vehicle.

Q That is the vehicle you observed?

A Yes, sir.

        \*     \*     \*     \*     \*     \*

Q Were there any individuals inside or close to that vehicle?

A Yes, sir, there was three black male subjects standing right outside the vehicle.

Q What did you do when you observed this?

A  Well, at this time I observed the vehicle and the subjects, and the subjects were acting in a loud and disorderly manner.

One subject was wearing a blue jacket and one was wearing a red and plaid flannel shirt.  So at this time I obviously thought that they fit the description of the subjects.  So I got on the radio and called for assistance.

Deputy Eckhardt waited for assistance and then, with two additional officers, approached the car.  Testimony at trial established that appellant was wearing a red plaid flannel shirt and was leaning against a vehicle that was a foot and a half from a red Toyota with Delaware license plates.  When the officers approached, appellant threw a pipe suspected of containing marijuana under a car and attempted to flee;  he became combative when he was restrained.

A fourth officer, Deputy Wade Chambers, brought Mr. Reinert to the shopping center from the scene of the attack to see if Reinert could identify his attacker.  Deputy Chambers testified that there were about 35 to 50 people at the area of the show up, most of them black males twenty to thirty years old.  Appellant was struggling with the police at the time and threatening them.  The red jacket was half on and half off appellant.  Mr. Reinert, while sitting in Deputy Chambers' car and while not wearing his glasses, identified appellant as his attacker.

The police made three arrests at the shopping center that morning—appellant, another man named Michael Ingram who was sitting in a red Toyota at the time the police arrived, and a third man, Derrick Tillman.  At trial, Michael Ingram testified for the State, pursuant to a favorable plea agreement with the State.  He admitted that he had been the driver of the red Toyota whose occupants were involved in the attack on Mr. Reinert.  He also identified the appellant and Tillman as the men who beat and robbed Mr. Reinert.

Over objection by defense counsel, Deputy Chambers testified that, at the shopping center on the morning of the robbery, Mr. Reinert had identified appellant as one of the men who had attacked him. During its case-in-chief, the State did not ask Mr. Reinert if he had identified appellant at the shopping center; the defense, however, called Mr. Reinert to the stand during the presentation of its case.[2] Mr. Reinert testified that although he remembered being taken to the shopping center and seeing a car that looked like the one he described to police, he could not remember anything else. This obviously included identifying the appellant. In response to a question as to why he couldn't remember what transpired at the shopping center, Mr. Reinert explained: "Well, I was in a complete sweat at that time and emotionally upset."

Appellant produced an alibi witness who testified that he had been with the appellant at the shopping center at the time of the attack. The defense also produced as witnesses two men who were inmates with Ingram at the Worcester County Jail. One testified that Ingram had said "he would do anything he had to do to get out of these charges[.]" The other testified that Ingram had said that appellant and Tillman were not involved but that he was implicating them rather than the actual robbers, two men from Baltimore.

Appellant presents two questions for our consideration:

I.  Did the trial judge err by permitting a police officer to testify concerning the victim's show-up identification of appellant where the circumstances surrounding the identification did not tend to establish its reliability, the victim could not remember the confrontation, and the defense was not allowed to cross-examine him on the identification issue?

---

2. The court denied the defense motion to recall Reinert for cross-examination during the State's case-in-chief after Deputy Chambers testified.

II. Did the trial judge err by admitting an accomplice's extrajudicial statement naming appellant as one of the assailants?

We answer both questions in the negative and, therefore, affirm.

## I.

### *The Extra–Judicial Identification*

Appellant asserts that the judge erred when he admitted Deputy Chambers's testimony that Mr. Reinert had identified appellant as one of his attackers during the show-up at the shopping center. His objection is based on the fact that Mr. Reinert himself did not testify on direct examination as to his identification of his attacker that day. The reason for this failure to inquire was probably because, as the defense later discovered, Mr. Reinert could not remember making the identification. The State argued that this failure was immaterial inasmuch as Mr. Reinert was available on cross-examination for the defense to question about the identification. The defense did in fact call Mr. Reinert as part of its case. Reinert testified that although he remembered being taken to the shopping center and seeing a car that looked like the one he described to the police, he could not remember anything else. In response to a question as to why he couldn't remember what transpired at the shopping center, Mr. Reinert explained: "Well, I was in a complete sweat at that time and emotionally upset."

The Supreme Court of the United States recently addressed the admissibility of testimony concerning a prior, extra-judicial identification when the identifying witness is unable to explain the basis for the identification because of memory loss. *United States v. Owens*, 484 U.S. ——, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In *Owens*, a correctional counselor at a federal prison was brutally beaten with a metal pipe. The counselor, John Foster, was severely injured and remained hospitalized for nearly a month. As a

result of those injuries, Mr. Foster suffered serious memory loss. One week after the attack, Foster could not remember his attacker's name. Approximately three weeks after the attack, Foster told an F.B.I. agent investigating the attack that Owens had been his attacker. Foster also identified Owens from an array of photographs. At trial, Foster testified that he "clearly remembered" identifying Owens as his assailant, but admitted that he could no longer remember seeing his attacker. 108 S.Ct. at 841. Foster also admitted that he could remember none of the other numerous visitors at the hospital except the F.B.I. agent. Foster thus could not remember whether any of those visitors had suggested Owens was the assailant, nor could he remember having identified someone other than Owens as his attacker, although hospital records indicated that he had.

The Supreme Court rejected a defense claim that Foster's memory loss deprived the defendant of the right to be confronted with the witnesses against him. The Court noted:

"[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"

*Owens,* 108 S.Ct. at 842, citing *Kentucky v. Stincer,* 482 U.S. ——, ——, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987), quoting from *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam).

The *Owens* Court held that the defendant's right to confront the witnesses against him was satisfied because the defense had the ability to question the identifying witness about his possible bias, his lack of care and attentiveness, and his poor memory. 108 S.Ct. at 842. Thus, the Court found admissible the testimony: "I don't know whether this is the man who assaulted me, but I told the police I believed so earlier." *Id.* at 843.

This case is one step removed from *Owens,* however. In the case *sub judice,* the identifying witness could no longer remember having identified the appellant as his assailant and, consequently, the State did not attempt to identify appellant through the victim's testimony. Instead, the State had Deputy Chambers testify that Mr. Reinert had identified appellant as his assailant at the show-up at the shopping center.

There have been a multitude of Maryland cases dealing with testimony as to the extra-judicial identification of a defendant by an eyewitness, but none that precisely presents the situation here. *See, e.g., Bedford v. State,* 293 Md. 172, 443 A.2d 78 (1982) (A police officer was permitted to testify that the victims had selected the defendant's picture from a photo array although the victims no longer recognized the defendant as their assailant; the victims, however, had testified as to the certainty of their prior identification and the circumstances surrounding the identification.); *Proctor v. State,* 223 Md. 394, 164 A.2d 708 (1960) (police officer could testify as to victim's extra-judicial identification of defendant in a line-up, even though victim had not done so on the stand, inasmuch as it corroborated the victim's testimony concerning an earlier tentative identification at hospital and his positive identification at trial); *Judy v. State,* 218 Md. 168, 146 A.2d 29 (1958) (witness could testify that he previously identified defendant as the perpetrator); *Basoff v. State,* 208 Md. 643, 119 A.2d 917 (1956) (not prejudicial error for a police officer to testify that prosecuting witness identified defendant from a photo array and at a preliminary hearing when there was no objection to testimony about the identification at the hearing, witness identified defendant at trial, and circumstances of identification precluded suspicion of unfairness or unreliability). When these extra-judicial identifications are admitted, the Court of Appeals has held they are admitted as substantive evidence that the defendant committed the crime. *See Bedford,* 293 Md. 172, 443 A.2d 78. This court, however, has reversed convictions on two occasions where

the testimony as to a prior identification came from a third party who observed the identification and the party who made the identification was not present in court and available as a witness. *See Jones v. State,* 17 Md.App. 209, 300 A.2d 424 (1973), *Howard v. State,* 4 Md.App. 74, 241 A.2d 192 (1968).

Unlike the scenario in *Jones* and *Howard,* however, Mr. Reinert was available in the courtroom to be examined concerning his identification of appellant at the shopping center. We understand appellant's concern that he was not in a position where he could cross-examine Reinert about the show-up inasmuch as Reinert testified *prior to* Deputy Chambers and thus there had not been any testimony that appellant had been so identified. Under Maryland law, however, the opportunity to call Reinert as a witness and question him about the identification is sufficient to satisfy appellant's right to confront the witnesses against him.

In *Johnson v. State,* 237 Md. 283, 206 A.2d 138 (1965), the Court of Appeals held that a police sergeant was properly permitted to testify to an extra-judicial identification of the defendant by a witness even though the eyewitness did not corroborate that identification. The court held there was no error as long as the identifying person was "available as a witness so as to afford the accused the rights of confrontation and cross-examination." *Id.* at 291, 206 A.2d 138. Although appellant argues that direct examination of Reinert was not adequate, *Johnson* clearly indicates that having the opportunity to call the identifying witness on direct is adequate to protect the defendant's rights.

Appellant contends that the identification itself was suspect because of Reinert's lack of memory of the identification, the circumstances of the assault which limited Reinert's observations of the assailants, and the circumstances surrounding the show-up itself. We perceive no error. Appellant did not argue below that the circumstances of the show-up were impermissibly suggestive, so as to make the identification inadmissible. We also note that Reinert's limited ability to observe his assailants bears only on the

weight to be given his identification, not its admissibility. Finally, insofar as Reinert's lack of memory is concerned, as we noted *supra,* the Supreme Court held in *Owens* that a witness's testimony that he had previously identified the defendant as the perpetrator of a crime was admissible even though he could not then identify the defendant as his attacker. We recognize that in this case, unlike in *Owens,* Reinert could no longer remember identifying the defendant. We believe, however, that this also bears only on the weight to be given the identification by the trier of fact. Appellant was, in fact, in a much better position than the defendant in *Johnson, supra.* In *Johnson,* the defendant's conviction was upheld despite the fact that the only in-court identification was that of a third party who witnessed the extra-judicial identification of the defendant. It appears from the opinion that the defense never called the identifying party to the stand to decrease the damage of the identification. Thus, there is no way of knowing whether that witness remembered making the identification. In the case *sub judice,* appellant's examination of Reinert improved his claim that Reinert had misidentified his attackers.

## II.

### *The Prior Consistent Statement*

After the defense produced its witness who said Ingram had told him that he lied when he implicated appellant and Tillman in the crime, the State called Deputy Steve Hall in rebuttal. The Assistant State's Attorney asked Deputy Hall about a conversation he had with Ingram two weeks after the robbery. The defense objected. During a discussion at the bench, the State proffered that Deputy Hall would testify that Ingram told him two weeks after the robbery that appellant and Tillman had been his accomplices in the robbery. The State argued the conversation was admissible as a prior consistent statement. During the discussion at the bench, defense counsel implied that his objection was that the statement could not be admitted

substantively. The court permitted Deputy Hall to relay the conversation as a prior consistent statement and instructed the jury that the conversation was admissible only for the purpose of assisting the jury in evaluating Ingram's credibility.

On appeal, appellant argues that the statement was not admissible as a prior consistent statement because the conversation did not "tend to show that such consistency was present prior to the time of probable fabrication." *Boone v. State,* 33 Md.App. 1, 6, 363 A.2d 550, *cert. denied,* 279 Md. 681 (1976); *see also Lanasa v. State,* 109 Md. 602, 620, 71 A. 1058 (1909). Inasmuch as this argument was not presented to the trial judge, we believe it has been waived. *Leuschner v. State,* 41 Md.App. 423, 436, 397 A.2d 622, *cert. denied,* 285 Md. 731, *U.S. cert. denied,* 444 U.S. 933, 100 S.Ct. 279, 62 L.Ed.2d 192 (1979).

Furthermore, even if the objection had been preserved, the error, if any, was harmless beyond a reasonable doubt. Defense counsel produced evidence that Ingram had admitted he lied about appellant's involvement and thoroughly questioned Ingram concerning whether the plea agreement was a motivating factor in his testimony. In that regard, the jury was instructed:

> You may further consider—this again applies to Mr. Ingram—you may consider the testimony of a witness who testifies for the State as the result of a plea agreement or a promise that his testimony against the defendant will be brought to the attention of the Judge who will sentence him for his participation in the crime. However, you should consider such testimony with caution because the testimony may have been colored to gain leniency, freedom or financial benefit by testifying against the defendant.

Interestingly enough, not one word was said in closing argument about Ingram's so-called prior consistent statement. We believe the effect of Deputy Hall's rebuttal testimony was minimal, and thus the error, if any, was harmless. *See Dorsey v. State,* 276 Md. 638, 350 A.2d 665

(1976); *cf., Wright v. State,* 312 Md. 648, 653, 541 A.2d 988 (1988).

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.